BROMLEY *v.* ATWOOD.

Opinion delivered June 18, 1906.

1. WILL—CONSTRUCTION.—After making various bequests to Mrs. B., amounting to a substantial sum, a will proceeds: "But the said Mrs. B. is to make no charges against my estate for anything I owe her, or for waiting on me during my sickness at any time;

said gifts above being given to satisfy all of said claims and her kindness to me during her lifetime and waiting on me during my sickness." An account kept by testator showed that Mrs. B. was indebted to him in a large amount. *Held* that the bequests were given in lieu of a business settlement with Mrs. B. (Page 363.)

2.  SAME—PAROL EVIDENCE.—On the issue whether or not a legacy or devise was intended to forgive a debt from the legatee or devisee, parol evidence is admissible, and does not offend against the rule forbidding the varying or altering of a written instrument by oral testimony. (Page 363.)

3.  SAME—FORGIVENESS OF DEBT.—Testimony of a witness that after a will was written the testator had the witness to cast up the value of the property devised to a certain person, putting estimates upon each item, and that when the total was stated he then said that he had done a good part by the devisee, indicates that it was this total that the devisee was to have, and not that sum less what she owed him. (Page 363.)

4.  APPEAL—CONCLUSIVENESS OF FINDING.—Where the evidence is undisputed, and it is a mere question as to its effect and construction, the court's findings are not conclusive on appeal. (Page 364.)

Appeal from Cleveland Circuit Court; *Zachariah T. Wood*, Judge; reversed; affirmed.

C. B. Atwood died in Cleveland County, Arkansas, about the 3d day of May, 1904, leaving personal property amounting in value to the sum of $10,292.10 and certain real property.

On the 1st day of May, 1904, he made the following will: *"In the name of God, Amen.*

"I, Curtis B. Atwood, of Smith township, Cleveland County, Arkansas, being in ill health, but of sound mind and memory, do make and publish this my last will and testament.

"1.   It is my desire, as soon after my death as possible, that my executors hereinafter named pay my funeral expenses and all of my debts out of my personal property if possible, and, if not, out of my real estate, unless I have cash and accounts to pay off my indebtedness.

"2.   I give, bequeath and devise to Mrs. M. A. Bromley, who is now keeping house for me, the following real and personal property, towit: East half of northeast quarter of section seven (7), in township nine (9) south, range ten (10) west, containing 80 acres with all improvements thereon, and my horse,

one-horse wagon, and harness; all household and kitchen goods and furniture of every kind and description that I may own at my death; all corn and other feed stuff; one tool chest and all carpenter tools; all farming tools and implements, and all provisions, meat, corn, etc., that I may own at my death (except one mower and reaper); two baskets; all chickens that I may own; two cows and calves, and seven head of sheep to be selected by her; also the sum of five hundred ($500.00) dollars to be paid to her by my said executors as soon as possible after my death. But the said Mrs. M. A. Bromley is to make no charges against my estate for anything I owe her, or for waiting on me during my sickness at any time; said gifts above being given to satisfy all of said claims, and her kindness to me during her lifetime, and waiting on me during my sickness.

"3. I give, bequeath and devise to my brothers and sister all the rest of my real and personal property of every kind and description, debts or evidences of debts, after the first and second paragraphs are complied with, and all moneys or anything else that I may own at my death, to have and to hold, sell and dispose of as they may see fit.

"4. I do hereby appoint my brothers, G. C. Atwood and W. D. Atwood, my executors of this my last will and testament, to take charge of my property and dispose of same as directed above; directing my said executors not to disturb said Mrs. M. A. Bromley in any way in the possession of land or stock, or anything given to her, but to let her remain on said land, and at once allot to her the property so given, and to pay over to her the money so given as soon as possible. I hereby also notify my said executors, that I will keep as near out of debt as possible, so they will have but few debts to pay.

"It is my desire that said executors keep said estate out of the probate court, and wind the same up with as little expense and trouble as possible.

"In testimony whereof I hereunto set my hand and seal this first day of May, 1904."

W. D. Atwood and G. C. Atwood, named as executors of the will, accepted the appointment and acted as such.

The plaintiff, Mrs. M. A. Bromley, filed a petition in the probate court, in which she stated that deceased had devised and

bequeathed to her certain lands and personal property, including $500 in money, and directing that said executors pay to her the said sum of $500 as soon as possible after his death. She further stated that she was not indebted to the estate of deceased, and was not indebted to deceased at his death, but, on the contrary, that deceased was, at the time of his death, largely indebted to her for cooking, washing, keeping house and waiting on him, but that she was willing to relinquish all demands against the estate, and accept in lieu thereof the money and other property bequeathed to her in said will; that deceased owed very few debts, if any, at his death, except what he owed her; that she is entitled to the immediate payment of the said $500, and concluding with a prayer that the court direct the executors to pay over to her the said sum of $500 in cash, as directed by the will.

To this petition the executors answered, admitting the execution of the will, the probate thereof, the death of deceased, C. B. Atwood, and their possession of the assets of the estate, together with the books of account of the testator, and that he bequeathed to plaintiff certain real estate and personal property, and $500 in money, and that all property given her under the will had been turned over to her, except the sum of $500, but claimed that plaintiff, under the will, was to make no charge against the estate for anything deceased owed her for waiting on him during his sickness at any time, and that the bequest in the will was made to satisfy all of said claims, and for her kindness during his lifetime, and waiting on him; and further in the books of accounts of deceased they find that plaintiff owes to the estate of deceased an account, kept in his handwriting, amounting to $374.93; that this amount is due from plaintiff to the estate, and that she is insolvent, and that, if they should pay to her the $500 in money, they could never collect the account from her; that they have offered to pay her $125.07, the difference between the amount she owes the estate and the $500. This amount they bring into court and tender her. The petition and answer, together with testimony, was heard in the probate court at the August term, 1904, resulting in the prayer of the petition being granted, and from this order the executors appealed to the circuit court.

It was admitted at the trial by the executors that plaintiff commenced keeping house for the deceased in the year 1886,

and that the ledger containing the account for that year had been lost or misplaced by them, and it was agreed by the parties that at the top of the first page containing the account of deceased against plaintiff,. commencing in 1886, there was a written contract or statement, written by the deceased, in which he stated that he had that day employed plaintiff to keep house and work for him, and had agreed to pay her $45 per year for this service. It was shown in evidence by the books that the last credit entered in the account against the plaintiff by the deceased was in January, 1893, and is as follows, towit: "Work, 1891 and 1892— $90." The evidence also showed that the account kept by the testator against plaintiff was continued from page to page, and from ledger to ledger, in his book of accounts from 1886 to his death, and was never balanced or changed after the said $90 credit was entered in 1893—was only added up at the bottom of the page, and the total carried forward to the new page, and when the last page was added up, after the death of the testator, amounted to $394.93 in favor of deceased. It was admitted by the parties that to credit said account with $45 for 1893, and for each subsequent year up to the death of deceased, would show a balance of $130 due plaintiff.

C. D. Bromley, son of petitioner, testified that in the year 1886, his mother entered into a contract with deceased to keep house for him, and he agreed to pay her $45 per year; that she lived with him, and kept house for him, and worked for him, under the contract, about two years, and then married, and was away only about two weeks, when she and her husband separated. She then returned to the home of deceased, and commenced working and keeping house, under the contract as first made in 1886, and remained working and keeping house for him, under this contract until his death.

H. D. Sadler testified that he was present when deceased made the will, was one of the subscribing witnesses to it, and that, immediately after the will had been signed and witnessed, the testator called on him to get a pencil and sheet of paper and. take down what he had willed to plaintiff, Mrs. Bromley; that he did so, and that testator had him to put down the $500 mentioned in the will, along with what the testator considered the value of other property devised to her, and add the whole together, and

when this was done the testator remarked that he had done a very good part by Mrs. Bromley.

The defendants called as a witness W. D. Atwood, one of the executors, and a brother ·of deceased, who stated that he had run up the account kept by the testator against plaintiff, as shown by book of account, and found that she owed testator at the time of his death $374.93; that the estate of testator inventoried $10,000 in personal property, and that the executors now have sufficient funds in their hands, belonging to the estate, to pay off the claim of the plaintiff. All other property bequeathed had been given plaintiff except the $500.

This was all the evidence in the case. The court adjudged that plaintiff owed the estate $374.93, which should be deducted from the legacy of $500, and rendered judgment against defendants for the balance. Plaintiff has appealed.

*Taylor & Jones,* for appellant.

1. Although it is a legal presumption that no release was intended when a debt stands against a legacy, yet this presumption may be rebutted by proof arising on the face of the will or by parol. Rood on Wills, § 737; 47 Am. Dec. 428. The will itself recognizes an indebtedness from the testator to appellant, and nowhere intimates that the latter was in any manner indebted to him. The testimony of witness Sadler was competent to show the intention of the testator, and that the legacy was to be paid in full. Authorities *supra;* 13 Am. & Eng. Enc. Law, 80.

2. There is no indebtedness proved against appellant.

*W. S. Amis,* for appellees.

1. At the death of the testator an unsettled account against appellant. stood on the account book of the testator. Debts owing by an executor, administrator or legatee, are assets of the estate. 2 McCord (S. C.), 269; 1 Allen (Mass.), 531; 7 Cow. (N. Y.), 781. See also Kirby's Digest, § 56.

2. If the testator had intended to forgive the debt owing by appellant; he would have so stated in the will, or would have marked account settled.

HILL, C. J. The Reporter will state the issues, set out the will and give a summary of the evidence, and from this statement of facts it will be seen that three questions are in the case.

1. Does the will on the face of it forgive the legatee's debt to the testator?

2. Does the evidence show that the testator intended to forgive the debt of the legatee to him?

3. Was a debt in fact proved against the legatee?

1. After making various bequests to Mrs. Bromley, amounting to a substantial sum, the instrument proceeds: "But the said Mrs. M. A. Bromley is to make no charges against my estate for anything I owe her, or for waiting on me during my sickness at any time; said gifts above being given to satisfy all of said claims and her kindness to me during her lifetime and waiting on me during my sickness." This shows the object of the devise to be twofold: (1) The satisfaction of charges which the testator felt Mrs. Bromley would be entitled to make against his estate for services for which he owed her, and, (2) in gratitude for her kindness the legacy and devise is evidently made much larger than a mere payment for services. While this language does not literally reach to a forgiveness of a debt due him from her, yet it does indicate that there is no such debt. He could not be indebted to her for services if they had been overpaid by the matters set forth in this account when he made this will, which was only two days before his death. The account exhibited against Mrs. Bromley is all in Mr. Atwood's handwriting, and of course he was possessed of exact knowledge of it. While not free of doubt, it seems that the will on its face showed an intention to give these bequests in lieu of a business settlement of his affairs with Mrs. Bromley.

2. Whatever doubts there are on this subject, derived from an examination of the will alone, are dispelled when the testimony is considered. In the first place, it may be said that parol testimony on an issue whether or not a legacy or devise was intended to forgive a debt from the legatee or devisee is admissible, and does not offend against the rule forbidding the varying or altering of a written instrument by oral testimony. Rood on Wills, § 737; *Zeigler* v. *Eckert,* 47 Am. Dec. 428; *Gilliam* v. *Brown,* 43 Miss. 641.

After the will was written the testator had Mr. Sadler to cast up the value of the property given Mrs. Bromley, putting estimates upon each item, and then said, when the total was

stated, that he had done a very good part by her; clearly having in mind that this total was what she was to have, not that sum less what she owed him.

3. It is doubtful whether under the evidence appellees have proved the debt. Mrs. Bromley was charged with the various items making up the account from time to time, but she was not credited since January, 1893, with her services at the agreed sum of $45 per annum. It was proved that these services continued until Mr. Atwood's death in May, 1904. If she was credited with this salary, then Mr. Atwood would have been in her debt $130 instead of the account standing $394.93 against her. There is but one way to escape the conclusion that Mr. Atwood was in debt to her, and that is to infer that he paid her salary in cash, and hence it was not entered upon the account. It is much more probable that it was a fixed charge, and he did not think of entering it, and merely charged her with items as she got them. It is not necessary to pursue this question whether the debt was proved or not. The court is of the opinion that the will and the evidence shows that Mr. Atwood intended to give Mrs. Bromley the items named in the will, irrespective of the state of the account between them, and in lieu of all compensation for her services, and also as a token of his gratitude to her. It is not consistent with his conduct that he intended the accounts to be cast up and a balance recovered. This is not a case where the findings of the circuit court are binding. The evidence is undisputed, and it is a mere question of its effect and construction.

Judgment reversed, and cause remanded.