BLOCKER, EXECUTOR, *v.* SCHERER.

4-7111                                           174 S. W. 2d 371

Opinion delivered June 28, 1943.

*Barney & Quinn,* for appellant.

*T. B. Vance,* for appellee.

GRIFFIN SMITH, Chief Justice.   C. M. Blocker owed Adolph Scherer $10,000 in 1929, evidenced by the debtor's unsecured note upon which a balance of $8,566.77 was due when Scherer died in June, 1929.[1]   Scherer devised to Blocker, conditionally, 120 acres in Miller county near the Louisiana line, and an undivided half interest in 120

[1] Following the testator's death, Blocker paid $5,147.18 on the note.   April 20, 1935, the principal balance was $3,982.50, with $915.97 interest.

acres owned jointly with G. W. Bishop, situated on Sulphur river in Miller county.[2] Blocker was named executor, to serve without bond. Chief beneficiaries were the testator's two sisters, Ruth Scherer and Fannie Sanders.

April 22, 1935, Blocker filed his annual settlement and account current. They were not presented to the court.

October 15, 1941, appellees petitioned the court for an order requiring Blocker to file his final settlement, and for judgment. Irregularities in the 1935 account were alleged. In a response of October, 1941, appellant claimed credit for certain payments made subsequent to the 1935 report. There was the defensive allegation that the indebtedness he owed was not money or cash on hand, "but is an asset only of the estate . . . uncollectible at this time."[3]

Appellees amended their petition and excepted to the 1935 and 1941 settlements, denying they had concurred in or agreed to Blocker's failure to close his administration. The court found that Blocker was not entitled to take the land bequeathed to him until his personal indebtedness had been discharged, "and if said indebtedness is greater than the value of the devise said executor is not entitled to take under the will, other than the value of the property devised."

The settlement of 1935 and supplemental settlement of 1941 were found to be correct. The executor was allowed a minor credit; also a fee of $250 for his service.

[2] The condition attached to the first devise was that if Blocker should sell for more than $7.50 per acre, "all taxes and interest which have accrued . . . since I acquired [the land], then he will share any profit received above the stipulated price with J. D. Sanderson." [Purpose of the condition was to carry out a verbal agreement Scherer had made with Sanderson.]

[3] An additional statement was that the respondent (Blocker), when he qualified as executor, "was unable to pay the said indebtedness so owing by him to . . . Scherer, and he has not been able at any time since his said appointment to pay said indebtedness. He is not now able to pay the same, [and] respectfully shows that he has heretofore paid on said indebtedness all that he has been able to pay, said payments showing upon the report of April 20, 1935, and that he has no means now available with which to pay and discharge the balance due."

These items were offset against Blocker's individual indebtedness to the estate, leaving a balance of $6,622.80. H. M. Barney as attorney was allowed a fee of $1,000. This was made a charge upon assets, with directions that it should not affect the real estate.

It is stated in one of the briefs that Blocker had been discharged as executor and Ruth Scherer appointed administratrix in succession. It is also said that the administratrix sued Blocker in chancery, offering the probate judgment, and praying that the·lien the probate court sought to impress upon the land be established in chancery and foreclosed.

Forty acres of the 120 in which Sanderson was conditionally interested forfeited for state and county taxes in 1928. Blocker, in 1934, conveyed his interest in this forty to Sanderson. Sanderson successfully attacked the forfeiture.[4] He sold this tract to F. W. Burford, reserving an oil payment of $3,000. Half of the oil transaction was transferred by Sanderson to Blocker, who still owns the interest. The remaining eighty acres near Louisiana (less an undivided half interest in oil and gas) are owned by Blocker and Sanderson.

Blocker testified that his. salary as county judge was $3,600 per year, and that "over the past years" he had received about $3,500 from oil leases on the lands devised to him by Scherer. He has not disposed of the half interest in the 120 acres of Sulphur river bottom lands.

Appellant had been a banker, but in 1929 became involved to the extent of one hundred to one hundred and fifty thousand dollars. Subsequently he was unable to meet his obligations as they matured, but endeavored to distribute assets and income among creditors to the best advantage. He and Scherer were long-time friends. Scherer often placed money with him for investment— $20,000 on one occasion. The $10,000 note represented loans that failed. These were assumed by appellant. Scherer had borrowed $1,000 from a Texarkana bank, pledging Blocker's note as security. The Scherer note,

[4] *Sanderson* v. *Thomas*, 192 Ark. 302, 90 S. W. 2d 965.

with interest, was paid by the executor from estate funds. It is contended by appellees this, in effect, was payment by the executor of his personal obligation through use of estate assets. While it is true the transaction released Blocker's note from the pledge, the primary obligation to the bank was Scherer's, and redemption of Blocker's note to Scherer was incidental. .

Did the probate court have power to impress a lien on the land in question?

A statutory provision [5] is that if any person shall appoint his debtor executor of his last will and testament, such appointment shall not extinguish the debt, "but shall be assets in his hands." This is contrary to the common law rule.

It should be remembered that Scherer's will was made more than a year after the debt of $10,000 was evidenced by Blocker's note. If it had been Scherer's purpose to require payment of the obligation before benefits of the devise could vest, it is reasonable to assume some expression indicative of such purpose would have been made a part of the will. Since there was no such directive we cannot supply the want of it in order to accomplish what would seem to be an equitable end; hence, it must be held that Blocker took a title he could transfer until legally restrained from doing so. See *Wheeler & Motter Mercantile Co.* v. *Knox,* 136 Ark. 95, 206 S. W. 46; *Avery Power Machinery Co.* v. *McAdams,* 177 Ark. 518, 7 S. W. 2d 770; *Falls* v. *Driver,* 177 Ark. 703, 7 S. W. 2d 780.

The Wheeler-Knox case deals with the right of set-off or retainer where an heir was a debtor. The holding is that the heir's obligation to the estate must be collected like any other debt, and that his distributive share is not an asset for an offset. Chief Justice HART asserted an analogous doctrine in the Avery-McAdams decision where McAdams, under his father's will, was residuary legatee, or devisee.

In a note in 1 A. L. R., p. 1027, it is said: "Inasmuch as the executor has nothing to do with realty specifically devised, unless it be needed for the purpose of paying

[5] Pope's Digest, § 74.

the testator's debts, there is no opportunity for the executor to retain the debt, and, accordingly, it has been held that, unless the testator has made the indebtedness of the devisee to himself a charge upon the land, it passes. free from any liability for such debt, except as it may be subjected thereto by the ordinary processes of law.'' Although the decisions of other jurisdictions are not uniform, this, in effect, seems to be the result of our holdings. See *Wood* v. *Knott,* 196 Ia. 544, 194 N. W. 953, 30 A. L. R. 775; Restatement of the Law, ''Trusts,'' § 251b; 21 American Jurisprudence, ''Executors and Administrators,'' § 45, *et seq.*

But, say appellees, even though realty devised to Blocker might go to him unencumbered by the note, all property owned by Scherer at the time of his death became assets in the executor's hands for payment of debts, and until debts were paid Blocker could not get an unimpaired title. Therefore, it is argued, those who took from Blocker personally were not innocent purchasers. Pope's Digest, § 66. In support of the contention that because of debts title could not pass, appellees point to the probate judgment of October 9, 1942, in favor of Barney, for $1,000. However, Judge BARNEY has expressly waived any claim against estate assets other than the note, and the judgment, by its terms, excepts real property. It follows that purchasers from Blocker are not affected by the lien created by § 66 of Pope's Digest.[6]

A headnote to *Bromley* v. *Atwood,* 79 Ark. 357, 96 S. W. 356, is: ''On the issue whether or not a legacy or devise was intended to forgive a debt from the legatee or devisee, parol evidence is admissible. . . .''

Although in the circumstances of this case (the only claimant treated as a creditor having waived and the judgment by express terms not being collectible from real property—the assumption being that this was con-

---

[6] The inventory attached to Blocker's first report (1935) showed real estate valued at $26,000, and personal property of $10,294.38. Since principal and accrued interest on the Blocker note were $8,768.37 as of May 30, 1929, result is that personal property other than the Blocker note amounted to $1,526.01.

sented to by the attorney-creditor) [7] purchasers from Blocker acquired title, it does not follow that Blocker, as executor, discharged his duty to the estate when he failed to subject real property of an insolvent debtor (Blocker personally) to payment of the note. This (except as to possible dower interest) could have been done by deed if other Blocker creditors failed to intervene; or the executor could have applied to court for instructions in lieu of proceeding against himself. Having failed to do so, and having by affirmative acts placed the property in other hands, it will be conclusively presumed that he received the equivalent, to be treated as cash once in hand, but converted. As a matter of fact, Blocker admits receipt of $3,500 from oil payments. What the other values are should be determined by the probate court on remand. Effect of this presumption of payment is that no exemption can be sustained if it should be asserted.

The judgment is reversed and the cause is remanded with directions to ascertain the exact amount of oil payments received by Blocker; to determine value of the forty-acre tract disposed of; to treat as a chattel real the item of $3,000 referred to as deferred oil payments, and to evaluate the half interest in 80 acres disposed of by Blocker. When this has been done the aggregate will be treated as cash once received. As to the half interest in 80 acres still owned by Blocker, and his half interest in 120 acres on Sulphur river, such properties are assets in the hands of the debtor. After probate court has fixed the value of properties disposed of by Blocker and judgment has been accordingly rendered, then with failure to pay over to Ruth Scherer as administratrix, ordinary legal remedies are then available for collection in an amount not exceeding the note and interest. Money due Judge BARNEY should have preferential consideration.

On Rehearing.

Appellees say the court erred in holding that "The remaining eighty acres near Louisiana (less an undivided half interest in oil and gas) are owned by Blocker and

---

[7] The claim asserted by Barney was not a debt due by the testator.

Sanderson.'' It is insisted that by the fourth section of Scherer's will the devise to Blocker was a conditional gift of the south half of the south*east* quarter of section seven, etc., whereas, in the inventory and appraisal the land is referred to as the south*west* quarter. It is true the will listed the south*east* quarter; but it is equally true that all parties to this litigation understood that the land was, in fact, the south*west* quarter. As appellees concede, and as the record reflects, Blocker's inventory of 1935, as executor, lists the south half of the south*west* quarter. This was brought into the controversy by counsel for appellees, who said: 'We now desire to introduce in evidence [the] executor's report and account current, dated April 22, 1935.[8] At page 34 of the transcript the appraisement shows that the south*west* quarter was the subject before the court. At page 75 of the transcript Blocker, in response to the question, ''Do you still own this land that was devised to you in this will of Adolph Scherer's?'' replied: ''I own an interest in it. That south Miller county land that was left in the will jointly to J. D. Sanderson and myself—we have sold forty acres of it and we own the balance of it.'' And again (pp. 75-76): ''Section four of the will says: '. . . being 120 acres with the following provisions, etc.' Now is that the 120 acres you testified about being in the south end of the county?'' Answer: ''It is.''

It is too clear to admit of serious controversy that Blocker, the Scherers, and the court treated the south half of the south*west* quarter of section seven as the property intended by the testator to pass under the will; hence, in the original opinion, no mention was made of an obvious error the parties cured by consent.

A second contention is that debts were due by the estate, and because of these subsisting obligations administration could not be closed by the waiver entered by Judge Barney; nor could Barney's release be retroactive.

The executor, in his 1935 report, took credit for $730.15 disbursed June 20, 1931, ''Part inheritance tax paid to David A. Gates, Commissioner of Revenues.''

---

[8] See transcript pages 21 and 30.

In appellees' petition for rehearing and modification of our opinion it is stated that Ruth Scherer advanced $770.30, "which advancement discharged the state's inheritance tax lien against the Scherer estate." It is also alleged that farm rents specifically bequeathed to Ruth Scherer were used by the executor to discharge estate debts, amounting to $195.30; further, that interest on the Blocker note was likewise "so used."

We do not find that demand was made against the estate for reimbursement, a factual matter the probate court still has jurisdiction to ascertain.

The petition for rehearing must be denied.