AYRES v. KING et al., Appellants.

(No. 1.)

Division One, March 29, 1902,

**Partition:** BY INSOLVENT HEIRS: EXECUTION CREDITOR. An heir who owes the estate far more than his distributive share therein has no such interest therein as will enable him to maintain a partition suit. Nor has his creditor who has reduced his claim against him to judgment and had his interest in the estate sold under execution and obtained a sheriff's deed therefor.

Appeal from Pike Circuit Court.—*Hon. D. H. Eby,* Judge.

REVERSED.

*Tapley & Fitzgerald* and *I. C. Dempsey* for appellants.

(1) James E. King being indebted to his brother, Joseph L. King, at the time of the death of the latter in a sum largely in excess of what would have been his share of the estate of his deceased brother, had no interest in the real estate and other property and effects owned by the deceased, and plaintiff did not acquire any interest therein by his alleged levy, sale and purchase. Ford v. Talmage, 36 Mo. App. 72; Ford, Admr. v. O'Donnell, 40 Mo. App. 59; Hopkins, Admr. v. Thompson, 73 Mo. App. 401; Lietman's Executors v. Lietman, 149 Mo. 112; Duffy v. Duffy, 155 Mo. 144; 1 Woerner's Am. Law of Administration (1 Ed.), sec. 71, p. 150. (2) James E. King being a non-resident and insolvent, it was not necessary that judgment be rendered against him. Humphreys v. Milling Co., 98 Mo. 549; Pendleton v. Perkins, 49 Mo. 565. (3) Real estate constitutes assets, and the jurisdiction of the probate court can not be defeated as is sought to be done in this case. Green

v. Tittman, 124 Mo. 372.    And all take with notice.    Rodgers v. Johnson, 125 Mo. 216; Hughes v. Burris, 85 Mo. 660.

*E. W. Major* and *J. D. Hostetter* for respondent.

(1)   The case of Duffy v. Duffy, 155 Mo. 144, seems to be relied on to support the contention of our adverse litigants. That case is the first case in this State wherein the Supreme Court recognizes the right of set-off of an inherited interest in land against the insolvent heir's debt to the decedent. But that case differs from the one at bar in that the administrator of the estate had reduced the debt against the insolvent heir to judgment, while in the case at bar there is no evidence of debt from James E. King except the fact that the administrator, an interested party, has made an ex parte inventory and listed certain items as debts against James E. King.    If this rule be adopted, then Thomas M. King would lose his interest in the real estate, because the inventory shows debts listed against him aggregating over $3,000, which was clearly more than his interest in the estate could possibly be.    Yet the heirs alleged, and the Audrain Circuit Court found, that Thomas M. King did have an interest in the real estate in controversy.    Then if he had an interest why did not James E. King have one also, and why did not Mr. Ayres acquire such interest at the execution sale under his judgment?    The impounding of the interest of an heir is an equitable proceeding, and before a party can invoke such proceedings there ought to be a reduction of the claim to judgment, and not an ex parte allegation of indebtedness.    Where a creditor seeks to set aside a conveyance as being in fraud of creditors, courts uniformly require him first to reduce his claim to judgment, but he may be excused from issuing execution where such would be nonproductive of results.    Turner v. Adams, 46 Mo. 95.   (2)

That the land of an intestate decedent descends directly to the heirs, is a proposition of law well established, and so elementary that it would seem unnecessary to cite authorities in support. Thorp v. Miller, 137 Mo. 239.

VALLIANT, J.—Suit for partition of an interest in land owned by Joseph L. King, deceased, in his lifetime, who died intestate leaving as his heirs at law his brothers and sisters who are defendants, and a brother, James E. King. The plaintiff recovered a judgment for $7,904.93 against James E. King and, shortly after the death of Joseph L. King, caused the undivided interest of James E., which he inherited from his brother Joseph, to be sold under execution on the judgment, and at such sale the plaintiff became the purchaser of that interest.

The answer of the defendants, the other brothers and sisters of Joseph, sets up two defenses: first that James E. King was indebted to his brother Joseph at the time of his death in the sum of three thousand dollars or more, which was more than his share in the estate was worth, and that he was wholly insolvent; second, that the estate of Joseph W. King was then in process of administration in the probate court, that claims to the amount of $7,000, had been duly allowed against the estate by that court, that there was not sufficient personal property to pay the debts and the land would probably have to be sold for that purpose, and that in pursuance to an order of the probate court the administrator had taken possession, and was then in possession of the land.

Upon the trial it was admitted that Joseph at the time of his death owned an undivided one-fourth interest in the 320 acres described in the petition. Plaintiff introduced in evidence his judgment against James E. King and the sheriff's deed under execution showing that at the sale plaintiff had purchased James's interest for $475.

Defendants introduced evidence showing that A. A. King, one of the defendants, had been duly qualified as administrator of the estate, that administration was still pending, that claims to the amount of $6,754.30 had been allowed against the estate, that the personal property was worth about $6,000 in notes to be collected, that whether there would be sufficient personalty to pay the debts was not then certain, that a proceeding was pending in the probate court to have the land sold to pay debts, that James E. King, whose interest the plaintiff bought at the execution sale, was wholly insolvent, had been absent from the State two or three years and not heard of since the death of Joseph, that James's indebtedness to the estate was five or six thousand dollars, and his distribution share would not pay ten per cent of it; that if all the heirs of Joseph took an equal share of Joseph's interest in the land in suit, each would get eight and eight-ninths acres, worth $20 an acre.

Sometime after the cause had been submitted on the proof and taken under advisement, at the next term of court, the death of James E. King was suggested, and that he left no heirs except his brothers and sisters, the defendants in the suit, and thereupon the suit as to him was dismissed and the court rendered judgment in favor of the plaintiff, finding that plaintiff, as purchaser of the share of James E. King, owned one thirty-sixth interest in the 320-acre tract, that A. A. King owned ten thirty-sixths interest, that E. P. King, David King and Thomas King each owned a seven thirty-sixth interest, and four other defendants named owned each one thirty-sixth, and decreed the land to be sold by the sheriff for partition. From that decree the defendants appeal.

The plaintiff has no substantial interest in this land. He holds under his sheriff's deed the bare legal title which his judgment debtor inherited, charged with a debt in favor of the estate far beyond its value. He stands in the shoes

of his judgment debtor. Suppose there had been no sheriff's sale and James E. King had brought this suit against the administrator and the heirs of Joseph L. King, asking to have partition of this land, and his undivided share set apart to him, and the defendants had answered and shown that he owed the estate of his deceased brother ten times as much as his inherited share was worth and was himself utterly insolvent and unable to pay any part of it, can it be conceived that any condition of the law could be found that would require the court to decree what he asked?

In Lietman's Ex. v. Lietman, 149 Mo. 112, a legatee who was indebted to the testator at his death for more than the amount of the legacy, endeavored on final settlement of the estate to obtain his legacy, he being then a non-resident and the debt against him not reduced to judgment, but the court held that he was not entitled to it. MARSHALL, J., speaking for the court after laying down the rule that the indebtedness of the legatee or distributee was assets of the estate to be deducted from his legacy or distribution share, said: "The reason, necessity and wisdom of the rule are strikingly illustrated in this case, where an insolvent, non-resident legatee seeks to diminish the distributive shares of others, by claiming a part of the estate, while he owes the estate twice as much as his legacy amounts to." And in Duffy v. Duffy, 155 Mo. 144, the same principle was applied to an heir who sought partition of the land that had descended to him and others. MARSHALL, J., spoke for the court in that case, also, and referring to the Leitman case as deciding the question, said: "True, in that case the debt due the estate was deducted from a specific legacy, while here the debt is asked to be deducted from the plaintiff's interest in the real estate described, but the principle involved is the same." The fact that in the Duffy case the debt had been reduced to judgment did not affect the decision. Here we have a non-resident debtor, not only beyond the reach of

process, but utterly insolvent, whom to attempt to sue would be worse than idle.

In such case if the debt due the estate by the heir·were less than the value of his share, if the partition would not embarrass the due course of the administration, the court would decree the partition deducting the debt owing by the plaintiff from his share, but in the facts before us where the debt is more than the share, the plaintiff has no standing in court and his· bill should be dismissed.

The judgment of the circuit court is reversed.    All concur.