LACLEDE STUBER, MAUD YOUNG, LACLEDE STUBER AND JOHN YOUNG, EXECUTORS OF REBECCA STUDER, DECEASED; VICTOR BASIL PENNY; LESLIE PENNY; ELSIE MARIE SMART; VICTOR BASIL PENNY, ADMINISTRATOR OF THE ESTATE OF NETTIE PENNY, DECEASED; AND ETHEL AUBCHON (PLAINTIFFS), RESPONDENTS, v. W. N. HARLAN (DEFENDANT), APPELLANT.—109 S. W. (2d) 687.

St. Louis Court of Appeals. Opinion filed November 2, 1937.

*Frank Howell* and *Omer H. Avery* for appellant.

*Theodore C. Bruere* for respondents.

BENNICK, C.—This case, which comes to the writer on reassignment, is a suit for the partition of certain real estate situated in St. Charles County and owned by one Rebecca Studer at the time of her death on October 31, 1927. By the terms of her will, which was duly admitted to probate in the Probate Court of St. Charles County, the deceased devised the real estate in question in equal shares to her four children, Laclede Studer, Nettie Penny, Ethel Aubuchon, and Maud Young, subject, however, to the specific provision contained in the will that if she should have paid out any money on account of having signed any obligation as security for her son-in-law, Edward Aubuchon, then such sums so paid out by her should be deducted from the share of her daughter, Ethel Aubuchon, in her said estate.

Thereafter there was instituted a partition suit, based upon the theory that the lands could not be partitioned in kind without great prejudice to the owners thereof, and praying that the same might be ordered to be sold and the proceeds distributed among the several parties according to their respective interests therein.

On October 10, 1931, during the pendency of the partition suit, defendant, W. N. Harlan, purchased the undivided one-fourth interest of Maud Young in and to the real estate in question at a trustee's sale under a deed of trust.

It is of importance to notice that the present controversy involves no dispute regarding the title or interest of any of the parties to the suit, but only the question of whether, in the ultimate division and distribution of the proceeds derived from the sale of the lands, the interest acquired by defendant, Harlan, shall be charged with an indebtedness of $900 and accrued interest owed by Maud Young, his predecessor in title, to the estate of the deceased. Under such circumstances title to real estate is not in issue in the suit, and appellate jurisdiction is therefore vested in this Court. [Cunningham v. Cunningham, 325 Mo. 1161, 30 S. W. (2d) 63; Devoto v. Devoto, 326 Mo. 511, 31 S. W. (2d) 805; Herchenroeder v. Herchenroeder, 75 Mo. App. 283.]

The indebtedness of Maud Young to the estate of the deceased was evidenced by a negotiable promissory note for $900, executed on October 17, 1921, bearing interest at the rate of 7 per cent per

annum, and made to mature one year after date. Interest was thereafter paid on the note to October 17, 1927. The principal of the note, with all interest accruing subsequent to October 17, 1927, is now due and unpaid, and the court expressly found that Maud Young, the maker of the note was insolvent.

It appears that at some time after the execution of the note the deceased indorsed it in blank and pledged it with the St. Charles Savings Bank as collateral security for two notes owed by her to the bank, one for $500, dated January 3, 1923, and the other for $225, dated August 13, 1927.

Thereafter the bank held the Maud Young collateral note among its papers until in 1931, when, upon discovering that for some undisclosed reason the two notes owed it by the deceased herself had not been presented for allowance against her estate within the year and were therefore barred by limitation of time, it charged the amount of such notes off of its books as a loss, and therewith turned the collateral note over to the executors of the estate of the deceased, who subsequently filed in the probate court a supplemental or additional inventory charging themselves with the amount of the same.

In other words, the bank's position was that it at no time had any title to or interest in the Maud Young note save as collateral security for the payment of the two notes owed the bank by the deceased, so that when those two notes became barred by limitation of time it was the bank's duty, having elected to treat the indebtedness of the deceased as extinguished, to turn the collateral note over to the executors of the estate of the deceased then in process of administration.

The court found, among other things, that the amount of the note, with accrued interest, constituted a valid claim against Maud Young in favor of the estate of the deceased; that the interest or share of Maud Young in and to the real estate in question was subject to the amount due from her to the estate on the note; and that defendant, Harlan, was therefore entitled to an undivided one-fourth part of the lands, but subject to the amount of the indebtedness of Maud Young to the estate.

The court ordered that partition of the real estate be had among the parties entitled thereto according to their respective interests therein; that inasmuch as the lands were incapable of partition in kind without great prejudice and injury to the respective owners, the same should be sold, and the proceeds partitioned among those entitled thereto; and that so much of the share of Maud Young devised to her by the will as was equal to the amount due from her to the estate on her note should be paid to the executors of the estate, to be applied by them upon the indebtedness of Maud Young to the estate.

From such judgment and decree defendant's appeal to this court has been perfected in the usual course.

The case turns primarily upon the question of whether the note executed by Maud Young was the property of the deceased at the time of her death so as thereupon to have become an asset of her estate, and, if so, of whether the undivided one-fourth interest in the lands devised to Maud Young is properly to be charged with the amount of her indebtedness to the estate.

The evidence adduced could hardly have warranted any other finding than that the note was the property of the deceased at the time of her death so as thereupon to have become an asset of her estate. Though the note had indeed been indorsed by the deceased and delivered by her to the bank, the intention of the parties, according to the evidence, was not that the note should be held by the bank absolutely, but only that it should be held as collateral security for the payment of the indebtedness of the deceased herself to the bank. [Wood v. Matthews, 73 Mo. 477.] Under such circumstances the bank did not become the absolute owner of the note, but was rather constituted a trustee with respect to the interest of the deceased in the note thus pledged by her with the bank as security for the payment of her debt owed to it. [Dibert v. D'Arcy, 248 Mo. 617, 647, 154 S. W. 1116.]

It is of course true that even though the notes owed the bank by the deceased became barred by limitation when no demand was made upon them within the year, the security of the pledge still continued as a valid and subsisting obligation for whatever it was worth, so that the same might have been held and realized on by the bank according to the terms of the contract had the bank seen fit to have adopted that course. [37 C. J. 701.] This for the reason that in legal theory the running of the special limitation statute did not of itself operate to satisfy, discharge, or extinguish the debt of the deceased, but merely served to bar the bank's remedy upon it. The fact is, however, that the legal consequences of the running of the special statute are actually of no concern to us in this proceeding. The important thing is that regardless of what the rights of the bank might have been with respect to the security, it thereafter elected to treat the principal debt as extinguished, and, upon charging the same off of its books as a loss, it had no further right to retain the collateral note, but was duty bound to return the same to the pledgor, or, in this instance, to the executors of her estate, to be inventoried by them as an additional asset thereof. [Wood v. Matthews, *supra*; Garrett v. Bank of Chelsea, 211 Mo. App. 238, 241 S. W. 87.]

Now the will of the deceased had in nowise purported to release or remit the debt owed the deceased by Maud Young, so that when the latter's note was inventoried as an asset of the estate it became the

duty of the executors to collect the same, either by an action at law upon it, or else, upon the theory of equitable retainer, by charging the amount of the same against the interest or share in the estate devised or bequeathed by the deceased to Maud Young. [Thompson v. McCune, 333 Mo. 758, 63 S. W. (2d) 41; State ex rel. v. Ennis, 222 Mo. App. 713, 7 S. W. (2d) 737.]

In other words, Maud Young's actual interest in the estate consisted of her distributive share less what she owed the estate, so that it was not only an undetermined interest which defendant, Harlan, acquired at the trustee's sale, but when the lands devised are ultimately sold under the order of the court and the proceeds come to be divided and distributed among the devisees or their successors according to their respective interests, defendant's *status* with respect to such distribution will be fundamentally that *status* which Maud Young herself would have occupied if she had retained her interest in the lands and was personally asserting her claim to her undivided share of the proceeds. [Duffy v. Duffy, 155 Mo. 144, 55 S. W. 1002; Ayres v. King, 168 Mo. 244, 67 S. W. 558; Traders' Bank v. Dennis" Estate (Mo. App.), 221 S. W. 796; Hopkins v. Thompson, 73 Mo. App. 401; 24 C. J. 487.]

Defendant argues, however, that the court was in any event in error in unqualifiedly charging the whole of Maud Young's indebtedness against her share in the real estate without any regard to the amount of the personal assets of the estate, his contention being that in all fairness and equity Maud Young's distributive share of the personal assets, if any, should first be set off against the amount of her indebtedness to the estate before her share in the real estate, as presently owned by defendant, should be charged with the whole or any part of such indebtedness.

As to this, the record discloses that there are indeed personal assets of the estate which may or may not be of considerable value, depending upon what may be realized from the sale of the land. It is of course true that the amount of cash now on hand, amounting to $218.59, is inconsiderable, and, as found by the lower court, will be needed to pay the costs of administration. However the Maud Young note is itself an asset of the estate, as are also the notes paid off by the deceased from time to time as security for her son-in-law, Edward Aubuchon, the amount of which, aggregating in excess of $4,200, is, by virtue of the express provision of the will of the deceased, to be deducted from the share of her daughter, Ethel Aubuchon.

As the interlocutory judgment of the court now stands, the whole of Maud Young's indebtedness to the estate of the deceased is to be charged against her undivided one-fourth interest in the real estate now owned by defendant, Harlan, which means, just as is pointed

out in the briefs, that defendant is the one who is to be penalized, and that Maud Young, after having had her indebtedness to the estate discharged at the sole expense of defendant, is to be left free to receive her full share in the personal assets of the estate, and this notwithstanding the fact that her share in such personal assets may well be sufficient to offset the amount of her indebtedness to the estate. Such a result is manifestly neither fair nor equitable, and should not be countenanced by the court unless there is no escape to be had from that conclusion.

Now the court in a partition suit is required to determine and declare the rights, titles, and interests of the parties (Sec. 1560, Revised Statutes Missouri 1929; Mo. St. Ann., sec. 1560, p. 1738), to which end it has been held that having determined the respective interests of the cotenants in the lands sought to be partitioned, the court may reserve in its decree the adjustment of equities between the parties, even to a time subsequent to the sale of the premises under the order of the court. [Devoto v. Devoto (Mo. App.), 39 S. W. (2d) 1083.]

The situation at bar seems unmistakably to call for the application of the above principle. As we have already pointed out, there is no dispute whatsoever about the title or interest of any of the parties entitled to share in the proceeds of the sale of the lands, and no one questions but that the court has ruled that feature of the case correctly. Instead the controversy to be determined goes wholly to the adjustment of the rights and equities of the parties, and especially so as between defendant, Harlan, and Maud Young, whose undivided interest in the lands he purchased.

To this end the real estate should be sold under the order of the court upon the terms which have heretofore been directed. It will then be understood, following the provision of the will, that from the share of Ethel Aubuchon in the net proceeds of the sale, an amount equal to the amount of the advances made by the deceased in her behalf will represent a personal asset of the estate. Of course Ethel Aubuchon's one-fourth share in the net proceeds of the sale may or may not equal or exceed the amount of such advances, depending upon the amount which is realized from the sale. However this uncertainty in nowise affects the relative equities in the case. The important thing is that following the sale, the executors of the estate of the deceased, who are parties to this proceeding, will then be in a position to determine from all the facts in their possession what Maud Young's ultimate distributive share in the personal assets of the estate will be. Whatever the amount of her said share may be, it should be applied to the discharge of her indebtedness to the estate before recourse is had to the real estate devised to her, and then, if such share of Maud Young in the personal assets prove insufficient to satisfy or offset her said indebtedness to the estate, upon a prop-

er showing of such fact by the executors in the circuit court the share of defendant, Harlan, in the proceeds of the sale should be charged by the circuit court with whatever the amount of the deficiency may be, and an order be entered that such sum be paid over to the executors at the time of final distribution.

This of course is only intended to be a bare outline of the procedure to be followed by the court in adjusting the equities which are at present in the case, leaving the actual calculations and mechanics of the matter to be worked out and attended to by the parties primarily concerned, subject always to the approval of the court.

It may be said that such procedure makes the entry of final judgment in the circuit court in a measure dependent upon the state of the administration proceedings in the probate court, but that this is true is no reason why the rights of the parties should not be adjusted in the manner indicated. Indeed the circumstances of the case are such as necessarily to require that each court have due regard for the pendency of the proceedings in the other. Here the lands sought to be divided have descended to the parties in interest subject to the claims against the estate of the deceased in the event of the insufficiency of the personal assets to pay the same, and in this situation the circuit court is forbidden by statute (Sec. 1558, R. S. Mo. 1929; Mo. St. Ann., sec. 1558, p. 1737) to enter an order of distribution until the estate is finally settled or it is satisfied that all claims against the same have been fully discharged. [Chrisman v. Divinia, 141 Mo. 122, 41 S. W. 920; Dildine v. De Hart, 293 Mo. 393, 239 S. W. 112.]

There is further dispute in the case regarding the time to which the interest on Maud Young's note should continue to accrue in determining the amount of her indebtedness to the estate. The case being one involving the doctrine of equitable retainer, we think that the date of the death of the deceased should determine this feature of the controversy. The will of the deceased spoke as of that date, and it was then that Maud Young became vested with her interest or share in the estate, which consisted, as we have already pointed out, of her distributive or inherited share less what she owed the estate. It follows, therefore, that if such share was equal to or in excess of the amount of her indebtedness, then no interest should accrue on her note subsequent to the death of the deceased as of which date the executors are retaining so much of Maud Young's share as will offset her indebtedness to the estate. In other words, her indebtedness is discharged, not by actual payment of the note, but upon the principle of equitable retainer, and it could only be in the event that her indebtedness to the estate exceeded the amount of her inherited or distributive share that interest should continue to accrue, and then only upon so much of the principal of the note as was in excess of the share vesting in her.

Finally there is a suggestion that the court erred in failing to require an accounting from plaintiffs to defendant for the use, rents, and profits of the real estate from and after the date that defendant acquired title to Maud Young's undivided interest therein. So far as this record discloses, whatever rents were collected by the executors at any time were collected pursuant to an order of the probate court directing them to take charge of the real estate for that purpose. Under such circumstances defendant could have no claim to any part of the rents in any event. The fact is, however, that he will nevertheless receive the benefit of their collection by the executors. The result of the executors' collection of the rents is that the personal assets of the estate are thereby increased, which means that Maud Young's share in the personal assets is proportionately increased, with a corresponding decrease in the liability of her undivided share in the real estate to be charged with the amount of her indebtedness to the estate.

It follows that the judgment of the circuit court should be reversed and the cause remanded with directions to the circuit court to enter up a new judgment in conformity with the views herein expressed. The Commissioner so recommends.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the Court.

The judgment of the circuit court is, accordingly, reversed and the cause remanded in accordance with the recommendations of the Commissioner. *Hostetter, P. J.,* and *Becker* and *McCullen, JJ.,* concur.