## In re Estate of Alexander Ferris.

Fred Ferris, Administrator, Appellant, v. Orin Ferris, Appellee.

### No. 46405.

June 6, 1944.

A. H. Borman, of Guttenberg, and L. D. Dennis, of Cedar Rapids, for appellant.

Alex Holmes, of Strawberry Point, for appellee.

BLISS, J.—Upon the filing of the application by the administrator, appellant, the court made an order fixing the time of the hearing thereon at the Clayton county courthouse, and directing service of written notice thereof, with copy of application, upon Orin Ferris, twenty days before the hearing. The notice

was served as ordered in Grant County, Wisconsin, directly across the Mississippi River from Clayton County, Iowa. Ferris, whom we will hereinafter refer to as appellee, filed a special appearance, alleging fifteen grounds why the application should be denied and dismissed and the service upon him quashed. This special appearance was not limited to jurisdictional matters but pleaded to the merits of the case in a number of its paragraphs, contrary to section 11088, Code of 1939. The appellant filed an answer to the special appearance alleging fifteen grounds why it should be dismissed and all relief thereunder denied and the prayer of the application granted. The court made an order overruling the special appearance, and granted the appellee ten days to plead further. The appellee took exceptions to the order but never appealed therefrom. Thereafter he challenged the application by filing the aforesaid demurrer and motion to dismiss, which realleged most of the matters set out in the special appearance. For resistance, the appellant, by reference thereto and incorporation of his answer to the special appearance, adopted and realleged all of the matters set forth therein.

The application of the administrator was filed on November 9, 1942. A few months prior he had filed his final report in the estate, with a supplement stating the assets were ready for distribution as soon as the matter of retainer was disposed of. It appears therefrom that Alex Ferris died intestate in Clayton County, Iowa, sometime in 1935, survived by five sons, four daughters, and three children of a deceased son. He died seized of one hundred sixty acres of farm land and two small separate tracts.

The parties agree that the only questions presented on this appeal are the ruling on the demurrer and motion to dismiss, and the consequent dismissal of the application, and judgment against the administrator. The facts, for the purpose of this appeal, must be limited to those properly pleaded in appellant's application as amended, and these must be accepted as true.

Appellant's "Application For Order," as amended, in substance, states: (1) That decedent's estate is now being administered in the district court of Clayton County, Iowa; that the assets thereof consist only of surplus cash proceeds derived from the sale of the estate's real property, sold by the adminis-

trator under order of court to pay the estate's indebtedness; that said estate is now fully administered upon and the assets thereof are now in the administrator's hands ready for distribution among the heirs; that on February 25, 1927, at Guttenberg, Iowa, appellee and his wife executed and delivered to Alex Ferris their promissory note for $563, payable to his order, three years after its date, at the Clayton County Bank, Guttenberg, Iowa, with interest at five per cent per annum until paid (2) that Alex Ferris is the intestate (3) that Orin Ferris is one of the heirs of the intestate (4) that said note is in the hands of the administrator and constitutes a part of the assets of decedent's estate, and there was due thereon on September 2, 1942, the sum of $999.98 (5) that the makers thereof, subsequent to its execution and delivery to Alex Ferris and before the statute of limitations of the state of Iowa had run against said note, moved to the state of Wisconsin and have resided there ever since; that under the laws of Wisconsin the statute of limitations has run against said note, which fact the administrator believes, and so charges the fact to be, to have been well known to the said Ferris and his attorney, and that should suit be commenced by the administrator against Ferris on his note in Wisconsin, the administrator believes and charges that Ferris could and would plead the statute of limitations of Wisconsin as a defense to said action and thus prevent judgment against him and avoid the payment of his just obligation to the estate, enabling him to receive more than his legal share of said estate, to the prejudice of the other heirs (6) that although said note is long past due the said Orin Ferris has refused and neglected and still refuses and neglects to pay the same, or to consent or permit the administrator to deduct the amount of said indebtedness from the distributive share due the said Ferris from the estate of his deceased father (7) that upon the refusal of the said Ferris to pay said indebtedness or to permit the deduction thereof from his distributive share, the administrator, under orders of court first obtained, commenced an action for judgment in said court, aided by attachment proceedings, against said Ferris upon said note, to which action said Ferris filed a special appearance attacking the jurisdiction of the court to hear or try said cause (8) that as far as the administrator has knowledge, the said Ferris has no meritorious

or legal defense to said claim based upon said note, executed and delivered by him to his father and now the property of the latter's estate (9) that the administrator believes and charges the facts to be that unless the court authorizes and orders him, in making distribution of the estate, to indulge against the said Ferris the right of retainer, from the said cash assets of the estate derived from the sale of real estate required to be sold under order of the court to pay estate indebtedness, of the amount owing by Ferris to said estate, said amount will be a total loss to said estate and to the heirs thereof. In the application the administrator prayed that the court fix the time and place of the hearing on the application and prescribe the notice thereof to be given Ferris, and that upon said hearing the administrator be authorized and directed by the court, in making distribution of said estate, to exercise the right of retainer as against the said Orin Ferris and the indebtedness owing by him to the estate, by retaining from his share of the estate the amount of his said indebtedness. The prayer was also for such other orders as may be just to the end that the rights of the estate, its heirs, and its administrator may be protected and preserved.

The grounds of appellee's demurrer to the application and motion to dismiss it, in substance and so far as pertinent, are as follows: (1) That Orin Ferris is not a resident of Iowa, but is and has been for several years a resident of Wisconsin (2) that a probate court is a court of special and limited jurisdiction and has no jurisdiction to hear the application; that the application is nothing more than a suit on a promissory note; that the court has no jurisdiction of either the subject matter or the person of Ferris (3) that the court had no jurisdiction to make the order setting the hearing on the application and prescribing the notice thereof served on Ferris in Wisconsin (4) that said notice gave the court no jurisdiction of the subject matter or person of Ferris (5) that there is no such proceeding as contemplated by the application known or recognized by the laws of Iowa, and that any procedure under the application would be without any jurisdiction, and null and void (6) that it is essential that the court have jurisdiction of both the person and the subject matter, and that jurisdiction of the subject matter cannot be waived and may be raised at any stage of the proceedings (7) that in

the probate court essential jurisdictional facts must be alleged (8) that the application shows on its face that there is another cause pending in this court between the same parties covering the same subject matter (9) that the application shows on its face that the administrator has adequate remedy at law, and that he can sue on the note in Wisconsin where Ferris has a right to live (10, 11) that the application shows on its face that an attempt was made to hold out from the proceeds of the sale of real estate the amount of the alleged claim, and there is no allegation that Ferris is insolvent, which fact is essential to give jurisdiction over the subject matter and the person of Ferris (12) that the court has no jurisdiction or authority to deprive Ferris of a trial on the merits in a law case before a jury on the said claimed note to which the said Ferris claims and has a defense, as is well known to the said administrator (13) that the said administrator has an adequate and complete remedy at law on said note, which is the only and exclusive remedy which he may employ to prove he has a claim, if any, on said note, against Orin Ferris, who is entitled to due process of law, which includes a day in court, in a law court, before a jury (14) that if the administrator does not want to employ his legal remedies in Iowa, there is no reason he may not employ his legal remedies in the state of Wisconsin in the usual procedure, instead of attempting to circumvent Ferris' legal right of a trial by jury and according to due process of law (15) that the application is not a hearing of a final report, and the court has no jurisdiction on such application (16) that the application shows on its face that the said note is barred by the statute of limitations; that by long delay and laches the administrator is now estopped to claim any rights; that he is not coming into court with clean hands; that the said estate has been pending in this court for years and years without any reason or cause for the delay and laches and inattention (17) that the facts alleged do not entitle the administrator to the relief asked (18) (this long paragraph is merely a catch-all realleging the grounds of all previous paragraphs) (19) that before there could be any jurisdiction in the court to pass upon any claimed right of retainer, the administrator must reduce his claim to judgment by a suit at law on the note.

■ I. This is a proceeding in probate triable at law and appellee's pleading attacking the application will be treated simply as a demurrer and not as a motion to dismiss. ·

We will first eliminate a number of so-called grounds which have no proper place in a demurrer. Such a pleading is but a declaration that the facts alleged in the pleading attacked, conceding them to be true, are not sufficient in law to put the demurring party to the necessity of answering or proceeding further with the cause. As tersely stated by Justice Cole, in Hayden v. Anderson, 17 Iowa 158, 162: "A demurrer admits the facts pleaded, but controverts their legal sufficiency." In the words of Justice Ladd, in Wapello State Savings Bank v. Colton, 143 Iowa 359, 364, 122 N. W. 149, 151: "A demurrer is but a legal exception to the sufficiency of a pleading." It neither asserts nor denies the truth of any matter of fact. A demurrer reaches only matters of fact alleged in the pleading attacked. It cannot sustain itself by its own allegations of fact, not appearing in the challenged pleading. As said in Ritter v. Schultz, 211 Iowa 106, 108, 232 N. W. 830, 831:

"It is apparent that the appellant has misconceived the office of a demurrer. The matters urged at this point do not appear upon the face of the petition. A demurrer can apply only as to matters alleged in and appearing upon the face of the petition; it concedes that the averments of fact well pleaded in the petition are true; nothing else is considered by the court in the determination of a demurrer to the petition, other than the averments of the petition and the demurrer."

Our decisions are as one on this proposition. In re Assessment of Stock in Sioux City Stock Yards Co., 223 Iowa 1066, 1070, 1071, 274 N. W. 17; Jefferies v. Fraternal Bankers' Reserve Society, 135 Iowa 284, 289, 112 N. W. 786, 14 Ann. Cas. 346; Melvin v. Melvin, 198 Iowa 1283, 1285, 201 N. W. 7; McPherson v. Commercial Bldg. & Sec. Co., 206 Iowa 562, 565, 218 N. W. 306, 307, where we said: "Allegations of fact are no proper part of a demurrer. We must, therefore, ignore these extraneous matters." See, also, Witousek v. Ideal Food Products Co., 197 Iowa 839, 843, 197 N. W. 912; Lenehan v. Drainage District, 219 Iowa 294, 297, 258 N. W. 91.

When a demurrer states as a fact that which does not appear on the face of the pleading questioned, it is what Lord Hardwicke, in Brownsword v. Edwards, 2 Ves. Sr. 243, 245, termed a *speaking* demurrer, which is the office of a plea and not of a demurrer. We have retained this designation of such defective pleading. In Jefferies v. Fraternal Bankers' Reserve Society, supra, 135 Iowa 284, 289, 112 N. W. 786, 788, 14 Ann. Cas. 346, the court said:

"A demurrer which sets up a ground dehors the record, or a ground which to be sustained requires reference to facts not appearing upon the face of the pleading thus attacked, is said to be a 'speaking demurrer,' and is never held good. * * * The demurrer under consideration must, therefore, be treated as if the affirmative matter set up therein were entirely eliminated * * *."

See, also, Ruddick v. Marshall, 23 Iowa 243, 246; Stewart v. Wild, 196 Iowa 678, 685, 195 N. W. 266, 269, where we said of a "speaking demurrer": "We can take no notice of its averment." In Grimes v. Taylor, Iowa, 282 N. W. 346, 347, not reported in the Iowa Reports, the court said:

"The appropriate pleading, in which to raise such affirmative defensive issues, is the defendant's answer. This court has many times affirmed with respect to a 'speaking demurrer', that we can take no notice of its allegations."

In his demurrer the appellee offended repeatedly against this universal rule of law. In paragraphs 9 and 14 he alleges that the appellant can sue at law in Wisconsin. What the statute or common law of Wisconsin is on this point is an issue of fact and not an issue of law. It is beyond the allegations of fact in the application, and must be ignored. It may be said as obiter, however, that the general rule is that administrators and executors ordinarily have no extraterritorial authority, unless permitted by statute or comity. 34 C. J. S., Executors and Administrators, section 988. See, also, O'Connor v. Root, 130 Iowa 553, 558, 107 N. W. 608. But aside from what we have said, whether the appellant can or should sue in Wisconsin is a

frivolous and immaterial allegation if the procedure he is using is proper and lawful.

In paragraph 12 the appellee asserts he has a defense to the note. This is an assertion of a fact which has no place in the demurrer. It is an affirmative defense, and is contrary to the fact allegations in the application that the debt is owing and the appellant knows of no meritorious defense to it, and there was due on September 2, 1942, the sum of $999.98, which constitutes a part of the assets of the estate. By his demurrer the appellee admitted these facts. Our system of pleading does not permit a party to answer on the merits and demur to a pleading at the same time and in the same pleading. Fairmount Creamery Co. v. Darger, 178 Iowa 732, 734, 160 N. W. 239; Bliss v. Watson, 208 Iowa 1199, 1202, 227 N. W. 108; Morrison v. Carroll Clinic, 204 Iowa 54, 56, 214 N. W. 705.

In paragraph 16 appellee alleges that the application shows on its face that the note is barred by the statute of limitations. This is contrary to the allegations of the application, which clearly show that the statute of limitations has not run against the note in Iowa. Our statute, section 11141(6), provides that the bar of this statute may be alleged as a ground of demurrer, but this can only be done when such fact is apparent in the pleading attacked. Goring v. Fitzgerald, 105 Iowa 507, 510, 75 N. W. 358; Wright v. Iowa Southern Util. Co., 230 Iowa 838, 840, 298 N. W. 790; Nylander v. Nylander, 221 Iowa 1358, 1361, 1362, 268 N. W. 7.

In paragraph 16 appellee pleads the defenses of laches, estoppel, long delay, and unclean hands. This paragraph and much of paragraph 18 must be ignored for the reasons stated herein. In In re Estate of Baker, 226 Iowa 1071, 1076, 285 N. W. 641, 643, the words of the court, by Justice Richards, are particularly pertinent, to wit:

"In these paragraphs the pleader averred matters that were purely defensive, involving controversial questions of fact, such as ratification, waiver, laches, former adjudication and estoppel. * * * But we are unable to sense a possibility that these pseudo-grounds, of such a nature that we take no notice of their averments nor look upon them as grounds at all, may have justified the ruling."

The grounds referred to in this division have no place in the demurrer; they do not aid the appellee, and they should have been overruled.

■ II. In paragraph number 8 of the demurrer the appellee urges the statutory ground, section 11141(3), that there is another action pending between the same parties for the same cause. It is based upon the allegation of the application that the appellant, under order of court, brought action in the district court of Clayton county against appellee to recover judgment against him on the note, aided by attachment. Just what the status of that action is does not clearly appear in the record. Neither does the manner of service. In view of the special appearance, it was apparently service outside of Iowa on a nonresident of this state, in which event the court would have no jurisdiction to render personal judgment against him. It is an action for judgment against the appellee on his note. The proceeding under consideration is not for the same cause. It is not an action for judgment on the note or for a judgment against the appellee. The appellant, as the administrator of an estate being administered in the district court of Clayton county, is seeking to make distribution of its assets, and the application under attack simply asks for an order to make that distribution, and for an order and authority to retain so much of the distributive share of the appellee as may be necessary to satisfy the obligation which it holds against him and which is part of the assets of the estate. Such an order and authority is necessary before a complete distribution of the assets and the closing of the estate can be had. The proceeding for distribution is not a separate cause of action between the appellant and the appellee.

In a similar proceeding, under statutes very like those of Iowa, the Kansas court, in Holden v. Spier, 65 Kan. 412, 414, 70 P. 348, said:

"Several grounds of error are alleged here, and the first is that the probate court had no jurisdiction to determine the alleged indebtedness of Holden to the estate, nor to render judgments on such ordinary liabilities against living persons. *This cannot be regarded as an action by the administrators to recover money from Holden, nor to obtain a judgment in favor*

*of the estate against him.* It was within the power of the probate court to ascertain the extent of the estate and in whose hands the funds or assets of the estate were held; and, also, to make such distribution as the law requires. Holden was claiming a share of the estate, and it devolved on the probate court to determine the amount of this share, and whether any portion of it was already in his hands. Before distribution could be made, it was necessary to ascertain the full amount of the fund to be distributed, and this could not be done until it was determined how much of the fund Holden held.'' (Italics ours.)

Since the court must distribute the estate, it follows as a necessary incident to its jurisdiction that it can determine who is entitled to its funds, and all matters essential to that determination. The administration of an estate, in many phases, is in the nature of a proceeding in rem. Goodrich v. Ferris, 214 U. S. 71, 29 S. Ct. 580, 53 L. Ed. 914; In re Estate of Harsh, post, 207 Iowa 84, 87, 218 N. W. 537.

While what we have said is decisive on this point, we call attention to a statement in 21 Am. Jur. 647, section 475, upon the authority of Eureka Bldg. & L. Assn. v. Shultz, 139 Kan. 435, 32 P. 2d 477, to wit:

''A proceeding to obtain a decree of distribution is not in the nature of a suit between party and party in which one seeks to recover a right withheld by the other, but is analogous in character to a proceeding in rem in which a decision between the parties before the court settles the rights of all parties to the property in question.''

The same statement of the law appears in 34 C. J. S., Executors and Administrators, section 513, with other citations in support of it.

This ground of the demurrer is without merit. See, also, Division III hereof.

■ III. Without specific reference to each separate ground of the demurrer attacking the jurisdiction of the court, we will discuss them as a whole, taking up first the jurisdiction of the person of the appellee. He was personally served with notice of the hearing upon the application in Grant County, Wisconsin.

In response thereto he filed his special appearance. This pleading was not limited to jurisdictional matters but pleaded to the merits of the application in several matters. We will pass any contention that by so pleading the appearance was general. But the special appearance was overruled, and he did not appeal therefrom. It was an appealable order, and he was not required to stand upon the pleading or permit entry of judgment against him. Irwin v. Keokuk Sav. Bk. & Tr. Co., 218 Iowa 470, 472, 254 N. W. 806. He made the question of his general appearance moot by appearing generally in filing his demurrer, which raised not only jurisdictional questions, but pleaded to the merits on several matters. Irwin v. Keokuk Sav. Bk. & Tr. Co., supra, 218 Iowa 470, 472, 254 N. W. 806. We find no applicable authority in our decisions respecting general appearance by demurrer. But see, Johnson & Co. v. Tostevin, 60 Iowa 46, 14 N. W. 95, holding that the demurrer of the defendant was a general appearance. But this was because of section 2626 of the Code of 1873, which was superseded by section 3541, Code of 1897, and section 11088 of the later Codes. But any pleading going to the merits of the case constitutes a general appearance. 6 C. J. S., Appearances, section 12f. · And a demurrer not addressed solely to the jurisdiction of the court but also raising other defenses constitutes a general appearance, even though it is insufficient as a demurrer, and is overruled. 6 C. J. S., Appearances, section 12(2). And, aside from these matters, the facts that he had filed a special appearance expressly stating its purpose of questioning only the jurisdiction, which was denied and no appeal was taken from the ruling and a demurrer was then filed without stating that it was intended as a special appearance, all clearly indicate that it was intended as a general appearance. Furthermore, Code section 11088, and the decisions construing it, require that unless the pleading is for the sole purpose of questioning the jurisdiction, and it is so announced at the time it is made, it will be a general appearance. Molsberry v. Briggs, 176 Iowa 525, 530, 531, 156 N. W. 999; Marsh v. Huffman, 199 Iowa 788, 794, 795, 202 N. W. 581; Read v. Rousch, 189 Iowa 695, 699, 179 N. W. 84, 86. As said in the latter case:

"A defendant cannot be heard to attack the jurisdiction of a court in which he is sued, and at the same time invoke such jurisdiction affirmatively in his own behalf."

Also, there was no basis for a special appearance. The proceeding by the application was purely in rem against the distributive share of the appellee to subject it to the satisfaction of his obligation to the estate, which obligation was an asset of the estate, and, with the promissory note which was in effect and fact the debt, was within the jurisdiction of the court. The res and every part thereof were in the jurisdiction of the court. The proceeding was not in personam against the appellee. The appellee was bound to appear in response to the notice or suffer default and judgment as prayed in the application. See Fidelity & Casualty Co. v. Bank of Plymouth, 213 Iowa 1058, 237 N. W. 234, which states that where notice is served outside of the state, and the plaintiff in the petition asks only for the subjection of property to his claim and does not further ask for any personal judgment, the court has jurisdiction for that purpose and a special appearance would not lie.

The appellee's constitutional rights of due process are not and will not be infringed under the application. Due process of law is commonly recognized as law and procedure in accord with fundamental principles of justice, the essence of which is notice and an opportunity to be heard before judgment.

The court had jurisdiction of the appellee's person.

IV. The court also had jurisdiction of the subject matter in every detail: the estate; its administration and distribution; the distributive share of the appellee; the assets, including the debt of appellee. It had the title to and possession and jurisdiction of the promissory note.

The district court of Clayton county is the probate court of that county, having complete jurisdiction, coextensive with the state, of the administration, settlement, and distribution of estates properly before it. Section 11825, Code, 1939, and chapters 503-509, inclusive; Anderson v. Meier, 227 Iowa 38, 42, 287 N. W. 250, and cases cited. The complete res in this case was properly before it.

Appellee contends that the probate court is a court of limited and special jurisdiction and has no jurisdiction to hear

the application (paragraph 2 of demurrer), and that it had no jurisdiction to make the order on the application and prescribe the notice of the hearing (paragraph 3). If the court below has no such jurisdiction, then what court has? See Code section 11822. Another ground (5) is that the proceeding contemplated by the application is not recognized by the laws of Iowa. Is it unheard-of procedure in Iowa for an administrator to apply for an order authorizing distribution of the assets of the estate, and any orders incident thereto?

"Administration of estates of deceased persons is undertaken by the state through its courts, and pursuant to its statutes. The administrator is the officer of the law and of the court, and conducts the administration pursuant to the provisions of the statutes, and under the court's authority and supervision. In re Estate of Meinert, 204 Iowa 355." In re Estate of Harsh, supra, 207 Iowa 84, 87, 218 N. W. 537, 539.

The probate court of Iowa is not a separate and distinct court with powers and jurisdiction strictly its own. It is a part of the district court, which has general, original, and exclusive jurisdiction of all actions, proceedings, and remedies, including complete and exclusive administration of testate and intestate estates. Code sections 10761, 10763.

"While proceedings in probate are to be distinguished from others, the court in which they are had is the same. Tucker v. Stewart, 121 Iowa [714] at 715. Iowa no longer has either a law, equity or a probate court. All three are part of the district court." In re Receivership of Magner, 173 Iowa 299, 317, 155 N. W. 317, 323.

While the probate court is not open to ordinary actions at law or suits in equity, it has plenary jurisdiction to hear and determine matters essential to an effective administration of probate business before it, even though they are ordinarily cognizable in law or equity proceedings. In re Receivership of Magner, supra, 173 Iowa 299, 315-318, 155 N. W. 317; In re Estate of Orwig, 185 Iowa 913, 924, 167 N. W. 654; Turner v. Hartford F. Ins. Co., 185 Iowa 1363, 1368, 1369, 172 N. W. 166.

See, also, Duffy v. Duffy, 114 Iowa 581, 583, 87 N. W. 500, 501, wherein the court said:

"This is neither a contest of a will nor a dispute as to a claim against the estate, but an application for an order as to the distribution of the estate, as to which no provision is made for trial by jury. There was no error in transferring the cause nor in refusing a jury trial."

See, also, In re Estate of Clifton, 207 Iowa 71, 80, 218 N. W. 926; Covert v. Sebern, 73 Iowa 564, 569, 35 N. W. 636, in which it was held that it was necessary for the probate court to construe a will in order to order a proper distribution of the legacies and property of the estate. To the same effect, see In re Estate of McAllister, 191 Iowa 906, 911, 183 N. W. 596; Jordan v. Woodin, 93 Iowa 453, 459, 61 N. W. 948. See, also, Mock v. Chalstrom, 121 Iowa 411, 416, 96 N. W. 909; In re Guardianship of Buck, 140 Iowa 355, 357, 118 N. W. 530. In Prouty v. Matheson, 107 Iowa 259, 263, 77 N. W. 1039, 1041, the court said, respecting the share petitioned for in probate by the distributee, without deductions for indebtedness:

"It is clear that, if she was indebted to the estate, the amount of such indebtedness should have been ascertained, and deducted from the amount to which she was entitled. Although the probate court could not decree a foreclosure of the mortgages, it had the power to determine what amount the executors should pay to Mrs. Matheson, and was necessarily required to take notice of her indebtedness to the estate, for the purpose of protecting it against unjust payments. It was certainly proper for the probate court to determine whether the notes constituted a valid claim of the estate against Mrs. Matheson, and to order that proper steps be taken to enforce the claim. We conclude that the plea of former adjudication is sustained."

See, also, Holden v. Spier, supra, 65 Kan. 412, 70 P. 348.

In speaking of the equitable right of retainer to satisfy a legatee's indebtedness to the estate, this court, in In re Estate of Mikkelsen, 202 Iowa 842, 848, 211 N. W. 254, 256, quoted with approval from In re Estate of Lietman, 149 Mo. 112, 120, 50

S. W. 307, 309, 73 Am. St. Rep. 374, as follows, respecting the right of retainer:

"'* * * it rests upon wholesome principles of right and justice, which can be administered in probate courts, without the aid of a court of conscience.'"

The same reference appears in In re Estate of Sheeler, 226 Iowa 650, 661, 284 N. W. 799.

We have no doubt that the court had complete jurisdiction of the subject matter.

V. In paragraphs 10 and 11 the demurrer alleges that the application shows upon its face that an attempt was made to hold out from the proceeds of the sale of real estate the amount of the alleged claim, and the application makes no allegation that Orin Ferris is insolvent, which fact is necessary to give the court jurisdiction of his person and of the subject matter.

The application is challenged on these two grounds only because it does not allege the insolvency of the appellee. In other words it impliedly concedes that if that fact were alleged these two grounds would not be good. The application alleges that the assets of the estate consist only of surplus cash proceeds derived from the sale of the estate's real property sold by the administrator under order of court to pay the obligations of the deceased and of the estate, and that these assets are ready for distribution. The application also alleges that the appellee is indebted to the estate in a specified amount, and that he is an heir of the decedent. It is our conclusion that an allegation of the insolvency of the appellee is not essential to the sufficiency of the application or to entitle the appellant to an order to retain and apply the distributive share of the appellee, or sufficient thereof, to the payment of appellee's debt to the estate.

Various phases and applications of the right which the executor or administrator has, in the nature of a right of retainer, to offset or balance indebtedness owing the estate by a beneficiary thereof, against his share therein, have been passed upon by this court. But this is the first time that this particular application of the right has been submitted. The appellee concedes that if the assets for distribution were cash left by the decedent, or were the cash proceeds of personal property owned

by him at his death, or which came into the hands of the administrator thereafter, the administrator could rightfully apply the appellee's distributive share thereof to the satisfaction of his debt to the estate, even though the appellee is solvent. In other words, he concedes that it is the holding of this court and of the courts generally that an administrator may retain from the distributive share of the *personal property* coming to an heir sufficient thereof to satisfy the heir's debt to the estate, whether the heir be solvent or insolvent. But he contends that this retainer must not be exercised against the distributive share of such debtor heir in cash proceeds from the sale of real estate owned by the decedent remaining after the payment of obligations of the decedent or of his estate, if the heir is solvent. He thus stakes his case upon the proposition that such cash proceeds are not personal property, but are in fact real estate, or are to be considered as such, and that under the decisions of this court the right of retention has no application to any real estate inherited by an heir who is indebted to the estate, unless the heir be insolvent. This proposition comes to the court for the first time.

In discussing this matter we will speak of the right as one of retainer, although it is more correctly designated "as a right in the nature of a right of retainer."

"It is an equitable right of its own nature, and not at all dependent upon any statute. It is the plain, moral as well as legal duty of the debtor to pay his debt to the estate. He has had the value from the estate. He ought in morals and law to restore it." Webb v. Fuller, 85 Maine 443, 445, 27 A. 346, 22 L. R. A. 177, quoted with approval in In re Estate of Mikkelsen, supra, 202 Iowa 842, 848, 211 N. W. 254, 256, and in In re Estate of Sheeler, supra, 226 Iowa 650, 662, 284 N. W. 799.

"The doctrine of equitable retainer is based upon the principle that he who seeks equity must do equity." Sartor v. Beaty, 25 S. C. 293, 296. See, also, Falconer v. Powe, Bail. Eq. (S. C.) 156; Leach v. Armstrong, 236 Mo. App. 382, 156 S. W. 2d 959, 962. A lucid statement of the principle, although it was applied to a legacy rather than an inheritance, is found in In re Akerman (England), 3 L. R., Ch. Div. 212, 219, where the court said:

"It is this. A person who owes an estate money, that is to say, who is bound to increase the general mass of the estate by a contribution of his own, cannot claim an aliquot share given to him out of that mass without first making the contribution which completes it. Nothing is in truth retained by the representative of the estate; nothing is in strict language set off; but the contributor is paid by holding in his own hand a part of the mass, which, if the mass were completed, he would receive back. * * * here I am dealing with a case such as I have mentioned—with a general fund made up of proceeds of sale of real estate, and proceeds of conversion of personal estate, and there seems to me to be a principle of general application, and no reason occurs to me, none has been suggested, why I should not apply that principle. Therefore, I think that if there is a debt payable by a residuary legatee under such circumstances as exist here, that debt must, for the purposes of computation, be included in the residue, and—again for the purposes of computation—treated as part of the share going to the legatee debtor."

Of this comment, which it sets out more completely, the Texas court, in an able and often-cited opinion on the matter, said:

"This clear and able exposition, in our opinion, announces the true doctrine and leaves little to be said." Oxsheer v. Nave, 90 Tex. 568, 575, 40 S. W. 7, 9, 10, 37 L. R. A. 98.

The true conception of the principle is thus expressed by the latter court in the same opinion, 90 Tex. 568, 573, 40 S. W. 7, 9, 37 L. R. A. 98:

"The right, in our opinion, rests, not so much upon any rule of set-off or of retainer as upon the broad principles of equity."

That the principle is not based upon any technical rule or distinction, but upon justice, equity, honesty and fair dealing, is stated in Smith v. Kearney, 2 Barb. Ch. (N. Y.) 533, 549, to wit:

"* * * the right to retain depended upon the principle that the legatee or distributee was not entitled to his legacy, or distributive share, while he retained in his own hands a part of the fund out of which that and other legacies, or distributive

shares, ought to be paid, or which were necessary to extinguish other claims on that fund. * * * And it is against conscience that he should receive any thing out of the fund without deducting therefrom the amount of that fund which is already in his hands, as a debtor to the estate.''

This is the universal expression and conception of the doctrine of retainer as applied to personal property. The courts and authorities uniformly agree that the right of retainer should and does apply to the personal estate coming to the distributee or legatee who is indebted to the estate. A minority of the courts hold that retainer does not apply to the real estate which descends or is devised to one indebted to the estate. The reason commonly given for making this distinction between the two classes of property is that real estate owned by one vests instantly upon his death in those to whom it descends or is devised, while the personalty is taken possession of by the administrator or executor for administration and distribution under orders of the probate court. Such a reason is a throw-back to the old English common-law rule that the lands of the decedent could be subjected neither to the payment of the debts of the decedent nor those of his heirs. If the reason was ever a sound one it has long ceased to exist in the United States because of the statutes of descent which have been passed by the states. There has never been any force to this reason in Iowa. For, under the statutes of descent of this state, the title to intestate property of a decedent, *both real and personal,* vests instantly upon his death in those to whom it is given by statute, subject to its need for administration purposes. This is also true of devises and legacies. Neither the administration of the estate nor the distribution of the property thereunder creates any new title. It merely ascertains the property and the particular amounts and persons to whom it or its proceeds should be ultimately distributed. Judge Woerner, in his splendid work on American Law of Administration, 3d Ed., vol. 2, 658, section 201, states that the right of creditors to the assets of a deceased person is the principal reason for requiring official administration. The rights of creditors of the decedent or of his estate in and to the property of the estate are paramount to the rights of the heirs or of their creditors. Reichard v. Chicago, B. & Q.

R. Co., 231 Iowa 563, 578-581, 1 N. W. 2d 721; In re Estate of Cooper, 229 Iowa 921, 925, 295 N. W. 448; and cases cited in each. The administrator of an intestate estate takes possession of and administers its assets as an express trustee of the creditors, heirs, spouse, and others properly interested therein. He may have the rights of the legal title holders for administration purposes, but the equitable title and the beneficial interest in the residuum is in the spouse and heirs as fixed by the statutes of descent and distribution. In re Estate of Willenbrock, 228 Iowa 234, 239, 240, 290 N. W. 502, and cases cited; Christe v. Chicago, R. I. & P. Ry. Co., 104 Iowa 707, 709-713, 74 N. W. 697; Goodman v. Bauer, 225 Iowa 1086, 1090, 281 N. W. 448. The title which the heirs to the real or personal property take on the death of the ancestor is not an absolute title but is a defeasible one, subject to interception, or divestment, in whole or in part, as the needs and purposes of administration may require. The interest of the heir is in the estate, and the estate is superior to that interest. Both realty and personalty are assets of the estate, subject to the payment of its debts, and the heir takes either or both by the same right and in the same manner. Under the statutes of Iowa the realty is on the same footing as the personalty in this respect. All the property of the estate, including the land, chattels, money, or choses in action, constitutes a common fund or rather a body of assets to be used, first for the payment of the obligations of the decedent and the estate, and second for distribution or division among the distributees. The same persons take the realty and the personalty or the proceeds of either, and in the same portions as fixed by statute. The only difference in the treatment in administration of realty and personalty is that the administrator takes immediate charge of the latter and the realty can be taken and subjected to the payment of debts, obligations, and costs of administration only after the personalty, if any there be, has first been exhausted for these administration purposes. In all other respects the realty and personalty are equally chargeable with the debts. The debt which an heir owes the estate is an asset thereof, and is a part of the common property to be administered on and allotted or paid to the distributees. It is a portion of the patrimony of his ancestor, which he has in hand or has

already received, and, unless the debt is paid or the portion restored to the estate for redistribution, it should be deducted or retained from the distributive share, whether of real or personal property, which he otherwise would have received. If the right of retainer is not so exercised in the administration of the estate, the heir in default will receive, if the distribution be of real estate, a share larger than the share of any other heir in his class by the amount of the debt which he owes the estate. No sound reason appears to us, nor has any been suggested, why the right of retainer should not be exercised, without difference or distinction, against the distributive share of an heir indebted to the estate, regardless of the kind or character of the property in that share. What sound principle of law, equity, or justice, or what rule of fair dealing and honesty, is served by exercising the right of retention against the personal property to which an heir indebted to the estate may be entitled, and by denying the right when his distributive share consists of real estate? Why should he be required to be honest with his coheirs in the first instance, and permitted to be dishonest with them in the second instance?

The statutes of descent indicate that the legislature intended it to be the public policy of the state that all heirs, in any class, should share equally in the estate of the intestate. When one dies intestate he indicates such intention. To permit the appellee to avoid the payment of his debt, and to receive his statutory share of the estate undiminished by deduction of the amount of the debt, because that share is real estate or bears the impress of realty, would defeat the public policy of the state and the intention of his father. The share which the appellee inherited from his father's estate is not the aliquot or fractional part thereof as determined by the number of his brothers and sisters, but it is only that part of such fractional share as will remain after it is diminished by the amount of his indebtedness to the estate. It is thus expressed by the Missouri court:

"An heir's interest in an estate consists of his distributive or inherited share of the estate less what he owes the estate; or, in other words, what he owes the estate is to be treated as so much of his interest in the estate already received by him, and

therefore in the distribution of the property, whether real or personal, he is entitled only to so much thereof as plus what he has already received will make his share equal to the share of the other heirs or distributees." Duffy v. Duffy, 155 Mo. 144, 147, 55 S. W. 1002, 1003.

See, also, In re Estate of Lietman, supra, 149 Mo. 112, 50 S. W. 307, 73 Am. St. Rep. 374; Thompson v. McCune, 333 Mo. 758, 63 S. W. 2d 41. This could be effected by the return to him of that part of the assets of the estate which consists of his debt or note, as a payment, in the amount thereof, on his distributive share. In re Estate of Kraeuter, 125 N. J. Eq. 120, 4 A. 2d 383. Whether solvent or insolvent, he would then have no just complaint in the means or manner of his payment. As said in Oxsheer v. Nave, supra, 90 Tex. 568, 576, 40 S. W. 7, 10, 11:

"The debt due by an heir to the estate is a part of the estate and like other assets is subject to partition and distribution. The heir owing the debt must either pay it or take his share in the debt or the debt as a part of his share, as the case may be."

The great weight of authority in this country, as evidenced by the decisions of the courts and the conclusions of text writers and annotators, fully supports the conclusions above set forth, with unanswerable reasons, and declares that the right of retainer applies not only to a cash surplus existing after the sale of real estate to pay debts of the estate or decedent, or for other administration purposes, but that it also applies to the real estate itself, willed to a devisee or descending to an heir. The decisions following were rendered in proceedings of various kinds—in probate, partition, quieting title, removing cloud upon title, and other actions—and involved real estate devised, real estate descended, and the proceeds of real estate converted, or sold to pay debts, or to effect distribution. In a few of the cases what the heir received was treated as an advancement, but the thought is also expressed that with respect to the right of retainer there is no basic difference between an advancement and a loan or other debt to the estate. As said by Justice Deemer in Wick v. Hickey, Iowa, 103 N. W. 469, 470:

"Whether debts or advancements, they should be deducted

from the amount William P., Sr., was entitled to receive from the estate of his father. If debts, by reason of what is called the right of detention or set-off; and, if advancements, they should be brought into hotchpot as provided by statute.''

See, also, hereinafter cited, Stenson v. Halvorson Co., 28 N. D. 151, 147 N. W. 800, L. R. A. 1915A, 1179, Ann. Cas. 1916D, 1289; and Keever v. Hunter, 62 Ohio St. 616, 57 N. E. 454. In many of them there is no mention of solvency or insolvency. In some of them insolvency of the heir or devisee is mentioned, but in few, if any of them, is it definitely given as a factor or a basic reason for the decision. See Lester v. Toole, 20 Ga. App. 381, 93 S. E. 55; Whatley v. Musselwhite, 189 Ga. 91, 5 S. E. 2d 227, 233, 234; Cox v. Brady, 58 Ga. App. 498, 199 S. E. 242; Nelson v. Murfee, 69 Ala. 598; Streety & Co. v. McCurdy, 104 Ala. 493, 16 So. 686; Burke v. Cunningham, 217 Ala. 188, 115 So. 182; Kling v. Goodman, 236 Ala. 297, 181 So. 745; Oxsheer v. Nave, supra, 90 Tex. 568, 40 S. W. 7, 37 L. R. A. 98; Young v. Hollingsworth, Tex. Civ. App., 16 S. W. 2d 844; Patranella v. Smith, Tex. Civ. App., 102 S. W. 2d 297; Loverett v. Veatch, 268 Ky. 797, 105 S. W. 2d 1052, 110 A. L. R. 1378; id. 265 Ky. 532, 97 S. W. 2d 47; Brown's Adm'r. v. Mattingly, 91 Ky. 275, 15 S. W. 353, 12 Ky. L. Rep. 869; Stenson v. Halvorson Co., supra, 28 N. D. 151, 147 N. W. 800, L. R. A. 1915A, 1179, Ann. Cas. 1916D, 1289; Aberle v. Merkel, 70 N. D. 89, 291 N. W. 913; In re Hornstra's Estate, 55 S. D. 513, 226 N. W. 740, 744; Dickinson's Estate, Cheyney's Appeal, 148 Pa. 142, 23 A. 1053; In re Donaldson's Estate, 158 Pa. 292, 27 A. 959, 23 Pittsb. Leg. J. 260; In re Callery's Estate, 333 Pa. 258, 3 A. 2d 407; Boyer v. Robinson, 26 Wash. 117, 66 P. 119; In re Estate of Jackson, 200 Wash. 116, 93 P. 2d 349, 123 A. L. R. 1281; Fiscus v. Moore, 121 Ind. 547, 23 N. E. 362, 7 L. R. A. 235; Fiscus v. Fiscus, 127 Ind. 283, 26 N. E. 831; Barnett v. Thomas, 36 Ind. App. 441, 75 N. E. 868, 114 Am. St. Rep. 385; New v. New, 127 Ind. 576, 27 N. E. 154; Wilson v. Channell, 102 Kan. 793, 175 P. 95, 1 A. L. R. 987; Blackwood v. Blackwood, 120 Kan. 72, 242 P. 451; Peoples State Bank v. Staley, 120 Kan. 650, 244 P. 1061; Duffy v. Duffy, supra, 155 Mo. 144, 55 S. W. 1002; Ayres v. King, 168 Mo. 249, 67 S. W. 1100; Hopkins v. Thompson, 73 Mo. App. 401; Traders Bank v. Dennis, Mo. App.,

221 S. W. 796; Haley v. Partain, 31 Ga. App. 144, 120 S. E. 14; Goodnough v. Webber, 75 Kan. 209, 88 P. 879; Leach v. Armstrong, supra, 236 Mo. App. 382, 149 S. W. 2d 865, 156 S. W. 2d 959; Johnson v. Jones, 54 Ga. App. 456, 188 S. E. 279; Warren v. Warren, 143 Misc. 43, 255 N. Y. Supp. 206; In re Van Nostrand's Will, 177 Misc. 1, 29 N. Y. S. 2d 857; Trabue v. Henderson, 180 Mo. 616, 79 S. W. 451; Keever v. Hunter, 62 Ohio St. 616, 57 N. E. 454; Lockwood v. Whitlesey, 23 Ohio Cir. Ct. Rep., N. S., 241; Fowler v. Lund, 9 Ohio L. Abs. 688; Eastman v. Sohl, 66 Ohio App. 383, 34 N. E. 2d 291; Carroll v. Fidelity & Dep. Co., Tex. Civ. App., 107 S. W. 2d 771; In re Bowers' Est., 196 Wash. 79, 81 P. 2d 813; Tobias v. Richardson, 26 Ohio Cir. Ct. Rep. 81, affirmed 72 Ohio St. 626, 76 N. E. 1133; Mulliken v. Mulliken, 1 Bland (Md.) 538; Mullen v. Moore, 156 Md. 420, 144 A. 342; Devries v. Hiss, 72 Md. 560, 20 A. 131 (equitable estate in real estate); Frank v. Wareheim, 177 Md. 43, 7 A. 2d 186; id. 179 Md. 59, 16 A. 2d 851; Gosnell v. Flack, 76 Md. 423, 428, 25 A. 411, 412, 18 L. R. A. 158; Stieff v. Collins, 65 Md. 69, 5 A. 294; Studer v. Harlan, 233 Mo. App. 811, 109 S. W. 2d 687, 689, 690; Boise Payette Lumber Co. v. National Surety Corp., 167 Or. 553, 118 P. 2d 1066; Stanley v. United States Nat. Bk., 110 Or. 648, 224 P. 835, 838; Slusher v. Coates, 120 Or. 338, 250 P. 617; Ex parte Wilson, 84 S. C. 444, 66 S. E. 675; In re Dayton's Estate, 173 Okla. 180, 46 P. 2d 933; McNamara v. Ayres, 191 S. C. 228, 196 S. E. 545; Ruiz v. Campbell, 6 Tex. Civ. App. 714, 26 S. W. 295; Small v. Usher, 77 S. C. 112, 57 S. E. 623.

In 3 Woerner, 3d Ed., The American Law of Administration, pages 1919, footnote, and 1924, section 564, it is said the trend of the authorities is to allow such set-off or deduction against either real or personal property.

In 11 R. C. L. 247, section 279, after referring to the fact that some courts except real estate and the proceeds of the sale thereof from the right of retainer, it is stated:

"In the majority of jurisdictions, however, this exception in regard to real estate as to the general rule that an executor or administrator may retain a debt due from an heir or legatee is not recognized, and hence it is that a debt due to the estate from an heir may be deducted from his distributive share of

the proceeds of real estate which has been sold in process of administration. The view taken by the courts that refuse to recognize the exception seems to be that the heir takes his share in the realty of the intestate subject to all equities existing in favor of the estate. And this has been held to be the rule applicable under statutes by virtue of which the real property of an intestate is made chargeable with the payment of the debts equally with the personalty, except that the personalty must first be exhausted."

Perhaps the leading case among those holding that the right of retainer is not applicable to devised or inherited real estate is Marvin v. Bowlby, 142 Mich. 245, 105 N. W. 751, 4 L. R. A., N. S., 189, 113 Am. St. Rep. 574, 7 Ann. Cas. 559. The annotator of the opinion, in the headnote to his annotation in 7 Ann. Cas. 559, 563, in criticising the opinion and the few decisions holding the same way, states that these courts are influenced by the common-law rule that the title to real property vested absolutely in the heirs upon the death of the ancestor and could not be made an asset for the payment of debts.

The authorities cited in Marvin v. Bowlby, supra, in support of its decision are Dearborn v. Preston, 7 Allen (Mass.) 192; Mann v. Mann, 12 Heisk. (Tenn.) 245; Towles v. Towles, 1 Head (Tenn.) 601; Sartor v. Beaty, supra, 25 S. C. 293; Smith v. Kearney, supra, 2 Barb. Ch. (N. Y.) 533; LaFoy v. LaFoy, 43 N. J. Eq. 206, 10 A. 266, 3 Am. St. Rep. 302. There are some later Michigan, Massachusetts, and New Jersey cases supporting that rule, and also In re Estate of Polito, 51 Cal. App. 752, 197 P. 976; Bruce v. Farrar, 156 Va. 542, 158 S. E. 856, 75 A. L. R. 872; In re Von Ruden, D. C., Minn., 22 F. 2d 860; Avery Power Machinery Co. v. McAdams, 177 Ark. 518, 7 S. W. 2d 770, 771; Blocker v. Scherer, 206 Ark. 28, 174 S. W. 2d 371; Wheeler & Motter Merc. Co. v. Knox, 136 Ark. 95, 206 S. W. 46; McClellan v. Solomon, 23 Fla. 437, 2 So. 825, 11 Am. St. Rep. 381.

The Nebraska court, in Stanton v. Stanton, 133 Neb. 563, 276 N. W. 180, basing its decision that the right of retainer rested upon broad principles of equity, held that right was properly applied to an heir's distributive share in realty. But the decision was reversed in 134 Neb. 660, 279 N. W. 336, by a five-to-three decision. In all of these cases the decisions are based

strictly on the fact that real estate of the decedent passes directly to the heirs. In none of the cases is the element of insolvency considered as a basic factor in the decision.

The Kentucky court had wabbled somewhat in its determination of whether real estate could be subjected to the right of retainer, which fact is commented upon in Loverett v. Veatch, supra, 268 Ky. 797, 105 S. W. 2d 1052, 110 A. L. R. 1378. But in that case the court definitely reaffirmed its stand taken in Brown's Adm'r. v. Mattingly, supra, 91 Ky. 275, 15 S. W. 353, 12 Ky. L. Rep. 869, that the distributee's interest in the real estate should be extinguished by the amount he had already received from his intestate. In the Loverett case the court said, in the concluding paragraph of its opinion: "We could no doubt strengthen and fortify the conclusions reached in this opinion by a continued discussion of the question and incorporating a more extensive reference to texts and opinions upholding the right of set-off or retainer as against both inherited personal property and real estate. However, we have said enough to direct the attention of the reader to sources which demonstrate that no such distinction should be drawn, and which conclusion is supported by irrefutable logic, and wherein the alleged distinction is dissipated as being shadowy and unsupported by either reason or justice. We, therefore, conclude that our domestic opinions above referred to, and all others of the same tenor, wherein we denied the superior right of the beneficiaries of the estate to deduct the amount of an heir's indebtedness from his portion of inherited real estate as well as personalty, are unsound and should no longer be followed, and they are now expressly overruled. Likewise, as an inevitable consequence, we conclude that the doctrine of retainer or set-off should apply equally to both inherited personal property and inherited real estate." The whole court was sitting.

Annotations on the matter of retainer may be found in 1 A. L. R. 991; 30 A. L. R. 775; 110 A. L. R. 1384; 7 Ann. Cas. 563; 4 L. R. A., N. S., 189 et seq.

We have discussed the majority and minority rules respecting the right of retainer against real estate at this length because this court agrees with neither group. Of this fact the appellee states:

"We wish to call the court's attention to the fact that the exception in Iowa making the rule is peculiar to Iowa; that such a rule is not adopted in other states; the rules in other states are either one way or the other—some states allowing a retainer against real estate or the proceeds thereof, and some states not allowing retainer against real estate or the proceeds thereof. *Iowa, as stated, has a rule of its own, only allowing a retainer against real estate or the proceeds thereof when the heir is insolvent, and the reason for that rule is that the real estate descends to the heirs directly, subject only to the payment of debts of the estate.*" (Italics ours.)

We agree with the appellee that this court has announced and maintained a rule that is all its own. As remarked in a dissenting opinion in Stanton v. Stanton, supra, 134 Neb. 660, 673, 279 N. W. 336, 342, its adoption may have been "an avoidance of fallacious holdings." The latter reference, no doubt, being to Rider v. Clark, 54 Iowa 292, 6 N. W. 271, and Russell v. Smith, 115 Iowa 261, 88 N. W. 361. However, the portion of appellee's statement which we have italicized indicates the unsoundness of this so-called "Iowa rule." If, as stated, the Iowa rule is based upon the contention that the decedent's real estate descends directly to his heirs, it is in exact accord with the minority rule stated in Marvin v. Bowlby, supra. If that rule is sound, it is sufficient unto itself. If it is simply a matter of title, it is wholly immaterial whether the heir is solvent or insolvent. Neither fact has anything to do with the devolution of title. The title descends directly to the heir whether he is solvent or insolvent. The result is that under our holdings the controlling factor is not title, but the solvency of the heir. If he has title and is *solvent*, retainer does not lie, but if he has title and is *insolvent*, retainer does lie. With respect to real estate we have cast aside and ignored all of the historic and fundamental reasons for the existence of the right of retainer— the broad equitable principles, equality among the distributees in intestate distribution of both real and personal property, the plain moral and legal duty of the heir to pay his debt to the estate, the equitable principle that an heir should not be permitted to share in an estate until he has discharged his obligation to contribute to it, that one seeking equity must do equity—

and have substituted in their stead a foreign excrescence which has no relation to any of them. The only possible basis for our holding is that if the heir is solvent the administrator may sue him in a separate action and recover. But that is also true when the distributive share is personal property, and yet, under our decisions the right of retainer may be exercised against the share in that case without regard to the solvency or insolvency of the debtor heir. There is no need for a separate action in that case. This illustrates the inconsistent and anomalous position into which our decisions have placed the court. It is true that the fact of the heir's insolvency may be a supporting reason for exercising the right of retainer in that particular instance, just as the fact of nonresidence or the bar of the statute of limitations is mentioned in a number of the cases as supporting a reason for indulging retainer. In Cowen v. Adams, 6 Cir., Ky., 78 F. 536, 545, the court said:

"Counsel for the administrator claim that, if William Means owed this debt, as one which survived the testator's death, it was and is a proper set-off against his legacy. And we think this claim is well founded; *and the proposition has, in this case, the support of an additional equity arising from the insolvency of the legatee.*"

But these incidental matters, while they are supporting and additional equities for exercising the right of retainer in particular instances, should not be made the basic reason or the sine qua non of its exercise, in all cases involving real estate.

There is a practical side to the matter. Why should an administrator be put to the expense of suing in another court, and perhaps in a foreign court, as in this case, by an ancillary administrator, when the probate court of the domicile has full jurisdiction to determine all phases of the matter, thus avoiding all circuity and multiplicity of action? Determining from surface appearances whether one is insolvent is not always easy, particularly if he is a nonresident. Why should an estate which already has property of the heir in its possession be required to take chances on his solvency and pay him his distributive share and then await his payment of the debt? In the end the

estate will probably have a worthless judgment, as a solvent and honest heir would first pay his debt or readily assent to an offset.

Of the futility of paying one a sum of money which he is obligated to return to you, the court, in Slusher v. Coates, supra, 120 Or. 338, 351, 250 P. 617, 621, said:

"To hold it against W. A. Slusher, charging him interest on the same, foreclosing and selling his estate, and then paying back to him a sum of money accruing from the same estate would be like taking money from one pocket and putting it into another of the same person, with the added effect, in this instance, that this perfunctory performance could be carried on in the very presence of one having a superior claim against the legatee in the very fund thus being manipulated."

In Rider v. Clark, supra, 54 Iowa 292, 6 N. W. 271, and Russell v. Smith, supra, 115 Iowa 261, 88 N. W. 361, we denied retainer against real estate. In the latter opinion appears the dictum that equity may interfere to protect the estate on account of the insolvency of the debtor or for some other cause. In Senneff v. Brackey, 165 Iowa 525, 541, 146 N. W. 24, 30, 1 A. L. R. 978, all of the fundamental reasons for the exercise of the right of retainer were present. The devisee had possessed himself of a large sum of his father's money before the latter's death, which he refused to restore to the estate and judgment was obtained against him. His father devised him a life estate in a quarter section of land and an equal share in the residuum of real and personal property. It was a case where all of the equities cried out for the exercise of retainer, but the decisions in Rider v. Clark and Russell v. Smith, supra, stood in the way. The court then resorted to the dictum in the later case and granted retainer, with the proviso that the "opinion is not to be taken as a precedent for more than is actually decided." The court also said in Senneff v. Brackey, 165 Iowa 525, 536, 146 N. W. 24, 28, 1 A. L. R. 978, in speaking of the injustice of not permitting retainer:

"Such a result should not be reached if there be any way in law or equity for avoiding it."

In Woods v. Knotts, 196 Iowa 544, 550, 194 N. W. 953, 956, 30 A. L. R. 768, the court reviewed our earlier cases on the question and the opposing views expressed in other jurisdictions. It stated and cited authority that it was quite generally held that the administrator may charge an heir's indebtedness to the estate against his share in the surplus proceeds of the sale of the real estate of an intestate and that many courts apply the same general rule of retainer to real estate as to personal property. Speaking for the court, Justice Stevens said:

"We have already called attention to the decisions of this court in which the right to offset claims in favor of the estate against the share of a distributee in real property is denied. As pointed out in the Brackey case, the courts are divided upon this question; *but it must be confessed that the reasons assigned by those denying such right are not very persuasive.*" (Italics ours.)

The decision turned upon the fact that the money was given as advancements.

In In re Estate of Sheeler, supra, 226 Iowa 650, 662, 663, 284 N. W. 799, there was an equitable conversion of realty into personalty under the terms of the will, and we held in that case that the insolvency or solvency of a devisee was not material. In that opinion there was obiter of its writer that there was no sound reason or law for making the fact of solvency an element in determining the right of retainer. In Schultz v. Locke, 204 Iowa 1127, 216 N. W. 617, a case involving retainer against a devise, we definitely held that insolvency of devisee justified the retainer. We have reannounced this holding in Bell v. Bell, 216 Iowa 837, 249 N. W. 137; Johnson v. Smith, 210 Iowa 591, 231 N. W. 470; Yungclas v. Yungclas, 213 Iowa 413, 239 N. W. 22; Lusby v. Wing, 207 Iowa 1287, 224 N. W. 554; Kramer v. Hofmann, 218 Iowa 1269, 257 N. W. 361; In re Estate of Flannery, 221 Iowa 265, 276, 264 N. W. 68; Bauer v. Bauer, 221 Iowa 782, 266 N. W. 531; Petty v. Hewlett, 225 Iowa 797, 281 N. W. 731; In re Estate of Morgan, 226 Iowa 68, 283 N. W. 267; Wilson v. Wilson, 226 Iowa 199, 283 N. W. 893, in which case retainer was denied because of the solvency of the heirs. There are others of our cases so holding. Insofar as any of those

cases, or others, allowed retainer against real estate, their results are right; but insofar as they hold that it was essential to establish that the heir or devisee was insolvent in order to permit the exercise of the right of retainer against real estate, those decisions are erroneous and are overruled. This subject has been quite fully discussed by the bar of the state during the past few years because of an excellent paper entitled, "Right of Retainer Against Real Estate to Offset Indebtedness Due From Heir and Procedure to Enforce Such Right," presented to various law institutes over the state by Judge Paul H. McCoid of Mount Pleasant. An instructive article on the subject, by Richard H. Plock, of Burlington, appears in Vol. V, 8-15, Iowa Bar Association Section of 24 Iowa L. Rev. These articles criticise the court for not adopting the broad equitable theory of retainer as to real estate, instead of allowing it only in cases of the insolvency of the heir or devisee. In the article in the Law Review, supra, the writer states:

"* * * the court may some day have to face the difficult case in which an administrator attempts to exercise the right against real estate passing to a solvent heir from an estate which contains no personal property, in an attempt to 'off-set' a debt upon which the period of limitations has expired. Under the authority of cases cited in this article, the heir could validly plead the bar of the statute of limitations as a defense to an action at law for judgment against him on the debt. He could maintain also that the administrator should not be permitted to exercise the right of retainer, the estate containing nothing but realty, and he being solvent. [If there should be another heir who was insolvent, whose debt was outlawed] the court would then be faced with the inequitable situation of permitting the exercise of the right [of retainer] on an outlawed debt against property passing to an insolvent heir, and denying its exercise in the case of a solvent heir."

In such a situation, under our decisions, the insolvent debtor would pay his debt to the estate by having his distributive share diminished by the amount of his debt, while the solvent heir would receive his distributive share without any deduction therefrom, and would have a good defense to an action on his

note. The illustration graphically demonstrates the unsoundness of the rule which makes the insolvency of the heir or devisee an essential factor in determining the right of retainer against any real estate inherited by him or devised to him.

The appellant urges that, while the money in his hands came from the sale of real estate, it is, necessarily, no longer real property but is now personal property. Appellee contends, under a well-recognized principle of equity, that this surplus must be treated as real estate. It must be conceded that, unless there are compelling reasons to the contrary, such surplus funds retain the impress of realty and for all purposes of succession or distribution are to be considered as real estate. In support of the appellant's position there is the case of Fiscus v. Moore, supra, 121 Ind. 547, 23 N. E. 362, 7 L. R. A. 235. And, in Nelson v. Murfee, supra, 69 Ala. 598, 604, the court held that, regardless of the fact the source of the money was real estate, it was nevertheless merely money and as such applicable to any debt of the heir to the estate. However, the Alabama court, in the later case of Streety & Co. v. McCurdy, supra, 104 Ala. 493, 500, 16 So. 686, 687, in criticising the reasoning of the court in Nelson v. Murfee, on this particular point, said:

"It is clear to us that this conclusion must be rested upon a broader ground than that stated in the opinion. As the proposition is there stated, the right of the administrator to the surplus proceeds of land of the intestate sold for the payment of debts is rested upon the mere fact of his possession thereof, which results from his having, and having exercised, the right to sell the lands and to devote such part as is necessary to the payment of the decedent's debts. * * * To the retention of such surplus * * * there must be some right to it other than can be evolved out of, or rested upon, the mere fortuitous circumstance of possession. And hence we say that Nelson v. Murfee can be sustained only upon the theory, and must be taken to have determined, that the administrator has a right to subject lands of his intestate to the payment of a debt due by the heir to the estate in priority and preference to the claims of a purchaser from the heir and also, of course, to the lien of a creditor of the heir attaching to the land on the death of the ancestor.

\* \* \* and, as we have seen, the point decided in Nelson v. Murfee must be rested on this consideration.''

We might not hesitate to follow the contention of the appellant and the decisions in the Indiana and earlier Alabama cases if there were no other alternative, but, since preponderating precedent and sound principles of law, equity, and justice clearly sustain our conclusion that the right of retainer is applicable to both real estate and personal estate, without regard to the solvency or insolvency of the heir, we prefer not to place our decision on the narrower and questioned ground.

Grounds 10 and 11 of the demurrer should have been overruled.

VI.  The nineteenth ground of the demurrer states that before there can be any jurisdiction in the court to pass upon the right of retainer the administrator must reduce his claim to judgment by a suit at law on the note.  For reasons already stated, there is no merit in this ground.  Under the admissions by reason of the demurrer, there is nothing before us to indicate that appellee has any defense to the note.  Its execution and delivery to the decedent, and its possession by the appellant, and the amount due thereon are all admitted by the demurrer.  These make a prima facie case for appellant.  In re Estate of Cheney, 223 Iowa 1076, 1080, 274 N. W. 5.  The probate court has full jurisdiction and power to determine all facts essential to the relief prayed for and to determine the amount each distributee is entitled to.  The right of retainer is an equitable remedy.  The question raised has been passed upon by a number of courts.  In Stenson v. Halvorson Co., supra, 28 N. D. 151, 162, 147 N. W. 800, 803, L. R. A. 1915A, 1179, Ann. Cas. 1916D, 1289, the court said:

''But one other question need be considered, which is the power and authority of the county court to direct such equitable set-off.  Its exercise of such power and authority involves its jurisdiction to determine judicially the fact and the extent of Martin's indebtedness to the estate.  We think there can be no question as to such jurisdiction.  It clearly has undoubted authority to determine who the proper distributees of the estate are and the portion to which each is entitled.''

See, also, Holden v. Spier, supra, 65 Kan. 412, 70 P. 348; Head v. Spier, 66 Kan. 386, 71 P. 833; Dickinson's Estate, Cheyney's Appeal, supra, 148 Pa. 142, 23 A. 1053; In re Estate of Dayton, supra, 173 Okla. 180, 46 P. 2d 933; Thompson v. McCune, supra, 333 Mo. 758, 63 S. W. 2d 41; In re Estate of Lietman, supra, 149 Mo. 112, 50 S. W. 307, 310, 73 Am. St. Rep. 374; In re Sheley's Estate, 35 N. M. 358, 298 P. 942, 947, 948; Slusher v. Coates, supra, 120 Or. 338, 250 P. 617, 621.

It is specifically held in Esmond v. Esmond, 154 Ill. App. 357, and in Greenwood v. Greenwood, 178 Ga. 605, 173 S. E. 858, 862, that it is not necessary that the heir's debt to the estate be first reduced to judgment. In Ex parte Wilson, supra, 84 S. C. 444, 447, 68 S. E. 675, 676, the court said:

"The contention that the establishment of the claim against appellant was a denial of the right of a trial before a jury cannot be sustained. This was not 'an issue of fact in an action for the recovery of money only, or specific real or personal property' requiring trial by jury, but was a strictly equitable issue, involving the ascertainment of the extent of the right of an estate under settlement to retain from appellant's interest therein the amount due by her to the estate."

See, also, 21 Standard Encyclopedia of Procedure 660, on right of trial by jury in probate courts.

This ground should have been overruled.

We have carefully considered all grounds of the demurrer and all arguments presented and it is our judgment that the trial court was in error in sustaining the demurrer. The judgment is therefore reversed and the cause is remanded for proceedings not inconsistent herewith.—Reversed and remanded.

All JUSTICES concur.